FILED
2016 Aug-12  AM 11:56
U.S. DISTRICT COURT
N.D. OF ALABAMA



## IN THE UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| SHAUN YOUNGER | ) | |
| | ) | |
|    Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NUMBER: |
| | ) | 2:15-cv-00952-SGC |
| PORTFOLIO RECOVERY | ) | |
| ASSOCIATES, LLC, et al, | ) | OPPOSED |
| | ) | |
|    Defendant. | ) | |

**PLAINTIFF'S RESPONSE AND BRIEF IN OPPOSITION TO THE
CROSS-MOTION FOR SUMMARY JUDGMENT FILED BY
EXPERIAN INFORMATION SOLUTIONS, INC.**

**Dated: August 12, 2016**

W. Whitney Seals
**PATE & COCHRUN LLP**
P.O. Box 10448
Birmingham, AL 35202-0448
Phone:(205) 323-3900
Fax:(205) 323-3906
whitney@plc-law.com

## TABLE OF CONTENTS

**PLAINTIFF'S CLAIMS UNDER 15 U.S.C. §1681e(b).** . . . . . . . . . . . . . . . . . . . **1**

**INTRODUCTION.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **1**

**STATEMENT OF UNDISPUTED MATERIAL FACTS.** . . . . . . . . . . . . . . . . **3**

**ARGUMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **9**

  I.  Plaintiff's 1681i(a) claims do not fail as Plaintiff has satisfied the threshold requirements for a finding of liability and Experian's actions are unreasonable as its conduct in this case and its policies clearly violate the FCRA.

  II.  Plaintiff has offered substantial evidence with regard to damages he suffered as a result of Experian's conduct such that summary judgment is improper.

  III.  Plaintiff has produced evidence that Experian's conduct was willful

**CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **28**

**CERTIFICATE OF SERVICE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **30**

**COMES NOW,** Plaintiff Shaun Younger ("Plaintiff") and responds in opposition to the Cross-Motion for Summary Judgment filed by Defendant Experian Information Solutions, Inc. ("Experian") as follows:

## PLAINTIFF'S CLAIMS UNDER 15 U.S.C. §1681e(b)

Plaintiff's claims under 15 U.S.C. §1681e(b) are due to be dismissed.  Since it is undisputed that Experian failed to conduct a reinvestigation after receiving Plaintiff's dispute, Plaintiff's extant claims involve only Experian's failure to conduct a reinvestigation and are made under 15 U.S.C. §1681i.  Defendant's Motion for Summary Judgment with regard to Plaintiff's claims under 15 U.S.C. §1681i is due to be denied for the reasons stated below.

## INTRODUCTION

This is a case about Experian, a credit reporting agency, intentionally and willfully failing to comply with the most basic element of the Fair Credit Reporting Act–conducting a reinvestigation of a disputed item on a consumer's credit file after the consumer notified Experian directly of the dispute.  On March 30, 2015, Plaintiff sent his Dispute directly to Experian, a CRA. Experian refused to reinvestigate – in fact, Experian notified Plaintiff in writing that his Dispute was "suspicious."  To date Experian does not know who determined Plaintiff's dispute was "suspicious" and has failed to provide any evidence as to why Plaintiff's dispute was deemed to be

1

"suspicious" other than some nebulous after the fact excuses it has come up with since suit was filed.

Mary Methvin, who testified via affidavit for Experian, states that Experian received correspondence from the Plaintiff that "did not appear to have come from the Plaintiff." *See* Methvin Aff. attached to Experian's Motion at ¶ 13.  Tellingly, Ms. Methvin, like Mr. Jason Scott who testified as Experian's corporate representative, completely fails to explain how or why or who determined Plaintiff's dispute letter appeared to have not come from him.  As such there is no evidence in the record to support Experian's determination that Plaintiff's dispute letter was "suspicious."  The Court, as well as the Plaintiff, is apparently expected to take Experian's word for it.

Under FCRA (15 U.S.C. § 1681i(a)(1) – (7)), a credit reporting agency ("CRA") must conduct a "reasonable reinvestigation" of a consumer's credit-reporting dispute within thirty (30) days after receiving notice of such a dispute (§ 1681i(a)(1)(A)). Within five (5) days after completion of the reinvestigation, the CRA must provide the consumer with notice of the results of the reinvestigation and of the consumer's rights relating to those results (§ 1681i(a)(6)). Congress has provided a remedy – actual damages along with statutory damages of $100 - $1,000 per violation, attorneys' fees, costs, and other forms of relief, including punitive damages, – to any consumer as to whom the CRA willfully fails to comply with the reinvestigation and

notice requirements. 15 U.S.C. § 1681n.

There is nothing in FCRA which excuses Experian from complying with FCRA's reinvestigation and notice-to-consumer requirements unless a dispute is deemed to be frivolous or irrelevant.  In this case it is undisputed that Plaintiff's dispute was not deemed to be frivolous or irrelevant by Experian. And, importantly, Experian can't make up an exception to FCRA's reinvestigation and notice requirements – one found nowhere in the statute - for disputes which Experian *says* are "suspicious." As such Experian's Motion for Summary Judgment is due to be denied.

Experian argues in its Brief that because the tradeline was ultimately deleted at the request of PRA two months after Plaintiff's dispute and, importantly, **only after Plaintiff filed this lawsuit**, that somehow that fact should weigh in Experian's favor. Plaintiff respectfully would submit that this case is not about a failure to delete information after a reinvestigation, but rather Experian's complete failure to even conduct a reinvestigation as required by the FCRA.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

1.     Plaintiff was sued by Portfolio Recovery Associates, LLC ("PRA"), a debt buyer, in Small Claims Court in Jefferson County over an alleged debt owed by the Plaintiff.  Complaint at ¶ 17 *accord* Deposition of Shaun Younger, attached as

3

Exhibit C to Experian's Cross-Motion for Summary Judgment, referred to herein as "Younger Depo." pp. 37-38.

2.      PRA voluntarily dismissed its claims against the Plaintiff with prejudice on January 9, 2015.  Complaint at ¶ 18, *accord*, Younger Depo., p. 39.

3.      On March 30, 2015, Plaintiff obtained a copy of his Experian credit report.  Younger Depo., p. 57.

4.      On that March 30, 2015 credit report, Experian was reporting an account for PRA with partial account number "515597002371...." with an original creditor listed as HSBC Bank Nevada, N.A. and having a balance of $2,082.00. Exhibit 4 (p. 57) to Younger Depo.

5.      This was the account that was the basis of the Small Claims lawsuit PRA filed against Plaintiff and that was dismissed with prejudice.  Younger Depo., p. 59.

6.      On March 30, 2015, after reviewing his Experian credit report, Plaintiff wrote Experian, disputing an entry on his credit report concerning an account being reported by Portfolio Recovery Assets, LLC ("PRA"). Complaint at ¶ 19, *accord* March 30, 2015 Letter of Plaintiff, attached as Ex. 3 (p. 26) to Deposition of Jason Scott which was previously submitted to the Court attached to Plaintiff's Motion for Summary Judgment under seal as "Exhibit B."   For purposes of this

4

Response in Opposition to Defendant's Motion for Summary Judgment, Plaintiff will refer to Jason Scott's deposition herein as "Scott Depo."

7.     Plaintiff disputed the PRA entry on his Experian credit report and referenced the partial account number HSBC-5597002371, stated that PRA claimed in its lawsuit against him that HSBC was the original creditor and enclosed a copy of PRA's complaint that claimed a balance of $2,082.26 and that identified HSBC Bank Nevada, N.A. as the original creditor.   March 30, 2015 Letter of Plaintiff, attached as Ex. 3 (p. 26) to Scott Depo.

8.     Plaintiff's dispute letter to Experian contained a copy of the Court's Order dismissing PRA's lawsuit against him and provided contact information for the Jefferson County Small Claims Clerk's office, contact information for the judge that handled the case and contact information for PRA's attorney who appeared on PRA's behalf at trial.  Complaint at ¶ 20 *accord* March 30, 2015 Letter of Plaintiff, attached as Ex. 3 (p. 26) to Scott Depo.

9.     Plaintiff testified that he wrote the March 30, 2015 letter with the assistance of counsel and after talking about it with counsel.  Younger Depo., pp. 68-69, 139.

10.     Plaintiff signed the letter and included in it his return mailing address. Younger Depo., p. 143.

5

11.     Experian is a credit reporting agency as that term is defined in 15 U.S.C. §1681a(p).  Scott Depo., p. 22, *accord* Experian's Motion for Summary Judgment, p. 2).

12.     Experian received the March 30, 2015 letter on April 7, 2015 Complaint at ¶ 24; Scott Depo., p. 25.

13.     Pursuant to its policies and procedures, Experian responded on April 15, 2015, claiming the request was "suspicious" and refused to reinvestigate the Plaintiff's dispute of the item in his credit file. Complaint at ¶¶ 28-30; Scott Depo., pp. 93, 96-97; Exhibit 6 attached to Scott Depo.

14.     Confirming the contents of the April 15, 2015 letter, Jason Scott, Experian's corporate representative deposed in this case, testified that Experian did not initiate any reinvestigation in response to receiving the March 30, 2015 letter from Plaintiff. Scott Depo., pp. 97, 131.

15.     The April 15, 2015 refusal to investigate letter was sent to Plaintiff as part of Experian's policies and procedures.  Scott Depo., p. 100.

16.     Experian did not consider Plaintiff's March 30, 2015 dispute letter to be frivolous or irrelevant and no correspondence was sent by Experian to the Plaintiff other than the April 15, 2015 letter.  Scott Depo., p. 72.

17.     Some unknown person in Experian's mail room in Allen, Texas,

6

where Plainiff's dispute letter was received, made the determination that Plaintiff's letter was "suspicious."  Scott Depo., pp. 100, 101.

18.   Experian does not know who identified Plaintiff's letter as suspicious. Scott Depo., p. 64.

19.   Experian's policy is that if a certain number of pieces of mail correspondence have certain trends or similarities then that renders that number of letters all suspicious.  Scott Depo., p. 103.

20.   Experian's corporate representative testified that Experian does not know for a fact that there were other letters with characteristics similar to the Plaintiff's dispute letter.  Scott Depo., p. 104.

21.   Experian's corporate representative testified that there is no evidence that Experian's employees in the Allen, Texas mail room where Plaintiff's dispute letter was received even read Plaintiff's dispute letter.  Scott Depo., p. 110.

22.   Paz Salinas, the employee of Experian Services Chile, S.A. is the person who processed the Plaintiff's dispute letter.  Scott Depo., pp. 33-34.

23.   Experian's corporate representative testified that Ms. Salinas' role was to send the Plaintiff the "suspicious paragraph" letter he received in response to his dispute.  Scott Depo., p. 67.

24.   According to Experian, Ms. Salinas could have read the letter and its

contents but because the letter had already been deemed "suspicious" the end result, namely the letter that the Plaintiff received in response to his dispute, would have been the same.  Scott Depo., p. 111.

25.     Prior to the events made the basis of this lawsuit, Plaintiff suffered an on the job injury with his employer and had to undergo a C6-C7 vertebrae fusion spinal surgery.  Younger Depo., p. 25.

26.     Plaintiff testified that Experian's refusal to reinvestigate caused him stress, headache, aches and pains and stated that a lot of his stress-related pain came from Experian's April 15, 2015 letter in which it refused to conduct a reinvestigation. Younger Depo., p. 164.  Further he was aggravated and irritated by Experian's April 15, 2015 letter.  Younger Depo., p. 161.

27.     Specifically with regard to the pain he endured as a result of Experian's April 15, 2015 letter, Plaintiff testified that the stress caused his physical pain to increase and that the pain was a tingling pain "like, pins and needles" in his left arm, in his "lower back area...And [Plaintiff's] left leg. But everything is on [Plaintiff's] –kind of on [Plaintiff's] left side."  Younger Depo., p. 241.

28.     Plaintiff experienced headaches and sleeplessness as a result of the incidents made the basis of this lawsuit.  Younger Depo., p. 245.

29.     Plaintiff testified that the conduct of the other defendants in this case

8

did not upset him as much as Experian's conduct.  Younger Depo., p. 248.  He further

testified that Experian's April 15, 2015 letter escalated the stress he already was

suffering as a result of the events of this lawsuit.  Younger Depo., p. 160.

## ARGUMENT

I.  **Plaintiff's 1681i(a) claims do not fail as Plaintiff has satisfied the threshold requirements for a finding of liability and Experian's actions are unreasonable as its conduct in this case and its policies clearly violate the FCRA.**

As Experian states in its brief, Section 1681i(a) of the FCRA requires a

consumer reporting agency, such as Experian, to conduct a reasonable

reinvestigation of a consumers dispute "if the completeness or accuracy of any

item of information contained in a consumer's file at a consumer reporting agency

is disputed by the consumer and the consumer notifies the agency directly."  15

U.S.C. §1681i(a)(1)(A).

Experian asks this Court to find that Plaintiff's claims fail as a matter of law

on the basis that the dispute did not come from the Plaintiff and that the disputed

item, here the PRA tradeline, was not part of Plaintiff's credit file at the time of the

dispute.

1.  **Plaintiff notified Experian directly regarding his dispute about inaccurate information on his Experian credit report.**

Experian represents to this Court that the record affirmatively shows that

9

Plaintiff did not draft or send his dispute to Experian and, as such, they were under no duty to conduct a reinvestigation as required by the FCRA. Experian relies upon the non-binding opinion *Klotz v. Trans Union, LLC*, 246 F.R.D. 208 (E.D. Pa. 2007) for this proposition. In *Klotz*, the plaintiff submitted disputes to Trans Union, a credit reporting agency like Experian, that were prepared by a company called NCER; a credit repair organization. Regarding the plaintiff's involvement in drafting the disputes the *Klotz* opinion states:

> At his deposition, the plaintiff was asked about this apparent inconsistency[1] and his role in forming the specific objections contained in the disputes. "NCER prepared this," he responded. "I just took them, signed them, and sent them....[a]nd that goes for all of them."...Similarly, he testified, "I was just told to sign it and send it...I didn't question what was what," adding that he did not check any of the disputes for accuracy...He further testified: "At the time, when this was written, honestly, I didn't pay enough attention to it...I just signed it, and sent it."

*Klotz* at 209.

In the case at bar, Plaintiff testified that he wrote the March 30, 2015 letter with the assistance of counsel and after talking about it with counsel. Younger Depo., pp. 68-69, 139. Further, Plaintiff signed the letter. Younger Depo., p. 143. Unlike in the *Klotz* case, there is no evidence that Plaintiff did not "pay enough attention" to the March 30, 2015 letter of that the letter was written by some credit

---

[1] The plaintiff in *Klotz* sent conflicting disputes that first claimed that certain accounts were paid in full before they went to collections and then later disputed that the accounts never belonged to him.

10

repair organization and that he was told just to send it.  Apparently Experian's position is that a consumer must draft the dispute alone and must personally place it in the mailbox, otherwise the consumer has not notified the credit reporting agency of the dispute "directly."  This defies common sense.  Notably, Experian has failed to cite a single case with a holding similar to *Klotz* involving an attorney assisting a consumer with a dispute.

A case that *does* address whether or not a consumer notified a credit reporting agency "directly" when his attorney assisted him with his dispute is *Pinner v. Schmidt*, 617 F. Supp. 342 (E.D. La. 1985) *aff'd in part and rev'd in part on other grounds*, 805 F.2d 1258 (5th Cir. 1986).  In that case the consumer's attorney drafted and sent the dispute letter, not the consumer as in this case.  The defendant in *Pinner* argued that its duty to reinvestigate under §1681i was not triggered because the plaintiff's attorney sent the dispute, not the plaintiff himself.  The court in *Pinner* disagreed with the defendant's position and held:

> It is inconceivable to the Court that an attorney could not represent a consumer in this regard, and the Court opines that requirements of direct communication elsewhere in the FCRA are intended only to protect the consumer by affording him a qualified confidentiality in the extensive information available from his credit files. *See* 15 U.S.C. §§ 1681b, 1681d.

*Pinner* at 347[2].

---

[2] Note that the consumer's right to send disputes directly to furnishers, added by FACTA in 2003 similarly requires that the disputes must be based upon a consumer's "direct request."  15 U.S.C.

The facts in the record in the case at bar are such that there is at least a genuine issue of material fact with regard to whether or not the Plaintiff, who testified he wrote the letter with the assistance of his lawyer, signed it himself and directed his lawyer to mail the letter, disputed an inaccuracy in his credit file *directly* with Experian.

### 2. Plaintiff's credit file contained an inaccuracy at the time of the March 30, 2015 dispute.

Experian's second argument that Plaintiff has failed to meet the threshold requirements necessary to bring a claim under § 1681i(a) appears to be that even though Plaintiff's dispute letter identified PRA as the entity reporting the inaccurate information, stated the exact amount of the "past due" amount claimed by PRA and identified that the original creditor of the account was HSBC Bank Nevada, N.A.–all information that Experian was reporting on Plaintiff's credit report– because the partial account number in the dispute letter (HSBC-5597002371) did not exactly match the partial account number being reported by

---

§1681s-2(a)(8)(G).  Yet the legislative history of that provision makes clear "[n]othing in this provision is intended to preclude a consumer's authorized family member or guardian (or attorneys acting as personal representatives)...from submitting a dispute notice on behalf of the consumer."  H.R. Rep. No. 108-263, at 45 (2003).  Furthermore, the furnisher-direct-dispute right explicitly excludes disputes sent by credit repair organizations.  15 U.S.C. § 1681s-2(a)(8)(G)

Experian (515597002371....) Experian should escape liability.[3]   Experian asks this

Court, as a matter of law, to find that Plaintiff's inclusion of ten exactly matching

digits of the account number along with the name of the original creditor as

opposed to twelve of the exactly matching account number digits, is fatal to his

claims and asks the Court to ignore all of the other information the Plaintiff

provided in his dispute letter that likewise appeared on his Experian credit report.

This argument alone demonstrates the unreasonableness of Experian's

reinvestigation procedures.  A jury, reviewing the information provided by the

Plaintiff to Experian in the March 30, 2015 letter and comparing that information

to the information being reported by Experian on the March 30, 2015 credit report

could reasonably find that Experian very easily could have determined that

Plaintiff was disputing the accuracy of the one and only PRA account appearing on

his Experian credit report.  "[A] consumer report cannot be 'accura[te]'

under...section 1681i if it contains information that is legally incorrect."  *Crane v.*

*Trans Union, LLC*, 282 F. Supp. 2d 311, 318 (E.D. Pa. 2003).  Obviously if the

report contained the PRA account and was reporting that the Plaintiff, after

receiving a judgment in his favor still had a "past due" balance on the account, it

---

[3] Experian's brief says in pertinent part: "Additionally, the record evidence establishes that the specific account number Plaintiff disputed was never reflected or reported in Plaintiff's Experian credit file.  Thus, Plaintiff's Section 1681i claims must fail."  Defendant's Brief at p. 16.

would be "legally inaccurate."

What Experian fails to state in its brief is that the testimony in this case is that there is no evidence anyone in the mail room in Allen, Texas where Plaintiff's dispute was sent even read his dispute, let alone checked the account number. Scott Depo., p. 110.  Even when the dispute was processed, according to Experian, Ms. Salinas, the person who processed Plaintiff's dispute, could have read the letter and its contents but because the letter had already been deemed "suspicious" the end result, namely the letter that the Plaintiff received in response to his dispute, would have been the same.  Scott Depo., p. 111.

Whether the account number in Plaintiff's dispute letter was an exact match or not made no difference in the determination that the letter was suspicious and that no reinvestigation would be conducted and there is no evidence anyone at Experian even looked at the account number listed in Plaintiff's dispute.

Experian further argues to this Court, "it is well established that a plaintiff can properly raise a Section 1681i(a) claim only by showing that his credit file contained a factual deficiency or error that could have been remedied by uncovering additional facts that provide a more accurate representation about a particular disputed entry."  Defendant's Brief at p. 16.  Experian argues further, "To determine whether a consumer has sufficiently identified a factual inaccuracy

14

on his or her credit report that would trigger Experian's duty to reinvestigate, **the 'decisive inquiry' is whether the defendant credit bureau could have uncovered the inaccuracy if it had reasonably reinvestigated the matter**." Defendant's Brief at p. 16 (emphasis added).

It is undisputed that Plaintiff was successful in the lawsuit filed against him by PRA over an old HSBC debt.  It is further undisputed that as a result of the judgment entered in his favor, Plaintiff was not legally responsible or obligated to pay that debt.  It is further undisputed that, despite receiving the Plaintiff's request for reinvestigation and dispute, **Experian refused to conduct any reinvestigation of the matter.**  Undoubtably Experian, had it even bothered to reinvestigate, could have considered the Court Order and complaint enclosed with the Plaintiff's dispute or could have contacted the court clerk, the judge who handled the case, or PRA's lawyer who filed the lawsuit against the Plaintiff all of which would have confirmed what Plaintiff wrote in his dispute letter: that PRA sued him over the debt and lost and as such he did not owe the debt being reported as "past due" on his Experian credit report.  At the very least, there is a question of fact with regard to whether or not Experian's duty to reinvestigate was triggered upon receipt of Plaintiff's dispute, containing all of the information that it contains, even if the account number only had 10 exactly matching digits instead of 12.

Section 1681i(a) of the FCRA requires a consumer reporting agency, such as Experian, to conduct a reasonable reinvestigation of a consumers dispute "if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly."  15 U.S.C. §1681i(a)(1)(A). Also, importantly, "[t]he term 'file,' when used in connection with information on any consumer, means *all of the information on that consumer* recorded and retained by a consumer reporting agency regardless of how the information is stored."  15 U.S.C. § 1681a(g) (emphasis added).  This means that disputes are not limited to just the account number, but all the information in the Plaintiff's file including the balance allegedly owed by the Plaintiff that he disputed in his March 30, 2015 letter. Clearly Experian's duty to reinvestigate was triggered upon receipt of Plaintiff's dispute.  Experian violated the FCRA when it refused to reinvestigate.

Experian argues to this Court in support of its position that it received a "carbon copy" of a dispute from its co-defendant, Equifax Information Solutions, LLC bearing a different account number and that it was justified in not taking action in response to receiving that carbon copy.  This has no bearing on Experian's failure to conduct a reinvestigation which is the illegal conduct made the basis of Plaintiff's claims in this case.

16

3.     **Experian's conduct in this case with respect to how it processed Plaintiff's dispute violates the FCRA**.

Experian argues that Plaintiff cannot establish that Experian breached a duty by refusing to reinvestigate what it deemed a "suspicious dispute." Experian goes on to argue that what made the letter "suspicious" was that "[t]he letter envelope had computer-generated postal labels and lacked a postmark, in particular a postmark corresponding to the same geographic area as the return address on the envelope." Defendant's Brief at pp. 12-13. There is no evidence in this case as to who determined Plaintiff's letter appeared suspicious or any reason why it was deemed suspicious. Experian's excuses after the fact with regard to why Plaintiff's dispute might have been considered "suspicious" by some unknown mail room employee are not sufficient to allow it to evade liability in this case. However, these ex post facto excuses appear to be an attempt to distract the Court from Experian's primary problem in this case: there is no exception to the requirement to reinvestigate for "suspicious" disputes found anywhere in the FCRA.

Experian cites *Nelson v. American Express Travel Related Services*,[4] in support of its contention that its conduct in refusing to reinvestigate "satisfied its duty under the FCRA." In *Nelson*, the plaintiff disputed two accounts and gave

---

[4] No. 2:08-cv-438-JHH, 2009 U.S. Dist. LEXIS 129787 (N.D. Ala. June 17, 2009), *aff'd*, 408 Fed. App'x 227 (11th Cir. 2010).

specific account numbers when Experian only had the respective customer numbers on file.  In that case, Experian responded to the plaintiff's correspondence with a letter notifying the plaintiff that Experian was not reporting the challenged accounts and had not taken any action with respect to the disputed information. Experian's conduct in the *Nelson* case seems reasonable.  Experian notified the consumer in *Nelson* that it was not reporting the accounts that were being disputed. At least that consumer knew the reason why his dispute would not be investigated.

What is unreasonable is what happened in the case before this Court: Experian refused to reinvestigate and provided the Plaintiff with no explanation other than to nebulously state that his dispute was "suspicious" and went on to declare in its letter to Plaintiff that it would refuse to investigate any future disputes it deemed to be suspicious.  In the *Nelson* case, that court stated: "When Experian was not able to properly identify the disputed account, it notified [the plaintiff] that those contested accounts could not be investigated."  *Nelson* at *41. There is no evidence whatsoever that anyone at Experian made any effort to look at the account numbers listed by Plaintiff in his dispute.  There is further no evidence that the partial account number provided by the Plaintiff that contained 10 of the 12 digits reported by Experian caused Experian to deem Plaintiff's letter "suspicious."  Clearly the *Nelson* case is distinguishable from the case at bar and

18

Experian's attempt to compare it to this case is clumsy at best.

Experian has never stated the reason or reasons that it deemed Plaintiff's Dispute "suspicious," and cannot even identify who at Experian made such a determination. Why not? Because it wasn't suspicious at all. The face of the document (Exhibit 3 to Younger Depo.) is a signed, typewritten letter that contained the Plaintiff's date of birth, the last four of his social security number, his return address and, importantly, a court order showing that Plaintiff was not responsible for the debt being reported by Experian. So what's really going on in this case? As it turns out, Experian has produced a document under a protective order which speaks to this issue and articulates a series of clues or trends that indicate, somehow, that a letter is "suspicious."  None of those trends involve the account number listed on a dispute.  But, again, Experian cannot or will not state the reason or reasons why Plaintiff's March 30, 2015 letter was deemed "suspicious" and yet asks this Court to enter summary judgment in its favor and find that it satisfied its duty under the FCRA when it clearly violated the Section 1681i(a) of the FCRA by failing to reinvestigate the Plaintiff's valid dispute.

**II.** **Plaintiff has offered substantial evidence with regard to damages he suffered as a result of Experian's conduct such that summary judgment is improper.**

Experian argues in its Motion for Summary Judgment is that the Plaintiff has

19

failed to establish cognizable damages as a result of Experian's misconduct.   As

an initial matter regarding damages, Plaintiff no longer claims credit damages.

Even without out of pocket damages, Plaintiff is still able to claim and recovery

other actual damages.  *Moore v. Equifax Info. Servs. LLC*, 333 F. Supp. 2d 1360,

1365 & n.3 (N.D. Ga. 2004) (noting that damages for mental distress are

recoverable under the FCRA even if the consumer has suffered no out-of-pocket losses).

Plaintiff does claim, and his testimony supports, actual damages for physical

injury and emotional distress as well as statutory damages for Experian's willful

violation of the FCRA pursuant to 15 U.S.C. § 1681n.

Prior to the events made the basis of this lawsuit, Plaintiff suffered an

on the job injury with his employer and had to undergo a C6-C7 vertebrae fusion

spinal surgery.  Younger Depo., p. 25.

Plaintiff testified specifically that *Experian's* refusal to reinvestigate caused

him: stress, headaches, aches and pains and stated that a lot of his stress-related

pain came from Experian's April 15, 2015 letter in which it refused to conduct a

reinvestigation.  Younger Depo., p. 164.

Specifically with regard to the pain he endured as a *direct* result of

Experian's April 15, 2015 letter, Plaintiff testified that the stress caused his

physical pain to increase and that the pain was a tingling pain "like, pins and

20

needles" in his left arm, in his "lower back area...And [Plaintiff's] left leg. But

everything is on [Plaintiff's] –kind of on [Plaintiff's] left side."  Younger Depo., p.

241.  Plaintiff experienced headaches and sleeplessness as a result of the incidents

made the basis of this lawsuit.  Younger Depo., p. 245.  Plaintiff testified that the

conduct of the other defendants in this case did not upset him as much as

Experian's conduct did.  Younger Depo., p. 248.  He further testified that

Experian's April 15, 2015 letter escalated the stress he already was suffering as a

result of the events of this lawsuit.  Younger Depo., p. 160.  Plaintiff's testimony is

sufficient to establish damages according to courts in this Circuit:

> Here, Plaintiff claims to have suffered emotional distress damages, including embarrassment, frustration, and irritability as a result of Defendant's violations of the FCRA. Plaintiff has provided his own testimony in support of his allegations. Based on this evidence, the Court cannot say, as a matter of law, that Plaintiff is not entitled to recover damages for emotional distress.  **In FCRA cases, a plaintiff is not required to produce evidence of emotional distress beyond his own testimony. See [Moore v. Equifax Info. Servs. LLC], 333 F. Supp. 2d at 1365 & n.3. (N.D. Ga. 2004). Accordingly, Defendant is not entitled to summary judgment on this claim.**

*King v. Asset Acceptance, LLC*, 452 F.Supp. 2d 1272 (N.D. Ga. 2006) (emphasis

added).  Should this Court deny summary judgment, as is urged, based solely upon

the Plaintiff's specific testimony regarding both his mental and physical injuries

sustained as a proximate result of Experian's conduct, it will not be on an island.[5]

---

[5] Llewellyn v. Allstate Home Loans, Inc., 711 F.3d 1173, 1183 (10th Cir. 2013) (corroboration of plaintiff's testimony regarding emotional distress damages unnecessary, noting that no circuit court has held to the contrary); Cortez v. Trans Union, L.L.C., 617 F.3d 688, 720 (3d Cir. 2010) ("If a jury accepts testimony of a plaintiff that establishes an injury without corroboration, the plaintiff should be allowed to recover under the FCRA."); Bach v. First Union Nat'l Bank, 149 Fed. Appx. 354 (6th Cir. 2005), subsequent appeal after remand, 486 F.3d 150 (6th Cir. 2007) (injured person's testimony alone may suffice to establish damages for emotional distress provided that she reasonably and sufficiently explains circumstances surrounding injury and does not rely on mere conclusory statements; upholding jury award of $400,000 in compensatory damages); Smith v. E-Backgroundchecks.com, 81 F. Supp. 3d 1342 (N.D. Ga. 2015) (plaintiff's testimony regarding loss of sleep, weight loss, and anxiety sufficient to create jury issue); Martinez v. Vericrest Fin., 2015 WL 347679 (E.D. Wis. Jan. 26, 2015) (denying summary judgment based on evidence of increased dosage of plaintiff's depression medication and her testimony that the loss of the home caused by credit reporting errors depressed her at Thanksgiving); Cathcart v. Am. Express Co., 2014 WL 5320236 (E.D. Mo. Oct. 17, 2014) (plaintiff's testimony regarding embarrassment and humiliation caused by defendant's negative reporting sufficient to warrant denial of summary judgment); Rogers v. JPMorgan Chase Bank, 2012 WL 2190900 (W.D. Wash. June 13, 2012) (denying summary judgment, finding sufficient evidence of emotional distress damages); Van Veen v. Equifax Info., 2012 WL 556063, at *8 (E.D. Pa. Feb. 14, 2012) (denying furnisher's summary judgment motion based on plaintiff's uncorroborated testimony at deposition); Meyer v. F.I.A. Card Serv., 780 F. Supp. 2d 879 (D. Minn. 2011) (while expressing skepticism, denying summary judgment based on plaintiff's evidence of humiliation over having to repeat to defendant her story of interception of convenience checks by her fiancé and not being believed); Burke v. Experian Info. Solutions, Inc., 2011 WL 1085874, at *8 (E.D. Va. 2011 Mar. 18, 2011) (finding plaintiff's affidavit regarding stress suffered from the inaccuracy in his credit report and physical symptoms he believed it caused sufficient to deny summary judgment; citing Sloane v. Equifax Info. Serv., L.L.C., 510 F.3d 495, 503–07 (4th Cir. 2007)); Dixon-Rollins v. Experian Info. Solutions, Inc., 753 F. Supp. 2d 452 (E.D. Pa. Sept. 23, 2010) (upholding jury verdict for actual damages based in part on plaintiff's testimony that she was humiliated and embarrassed as a result of collection account appearing in her credit report after repeated attempts to have it removed); Cosmas v. Am. Express Centurion Bank, 2010 WL 2516468, at *13 (D.N.J. June 14, 2010) (denying summary judgment because "a reasonable jury could conclude that Cosmas was made ashamed by AMEX's conduct"); Reeves v. Equifax Info. Serv., L.L.C., 2010 WL 2036661 (S.D. Miss. May 20, 2010) (denying summary judgment, finding sufficient evidence of factual disputes regarding plaintiff's evidence of emotional distress); Campbell v. Experian Info. Solutions, Inc., 2009 WL 3834125, at *6 (W.D. Mo. Nov. 13, 2009); Tilley v. Global Payments, Inc., 603 F. Supp. 2d 1314, 1325 (D. Kan. 2009); Scheel-Baggs v. Bank of Am., 575 F. Supp. 2d 1031, 1043 (W.D. Wis. 2008) (plaintiff's deposition testimony regarding "the various symptoms that she was experiencing and. . . . why she felt humiliated by the inaccurate information" was not inadequate as a matter of law); Cordero v. Fin. Assistance, Inc., 2006 WL 3456662, at *9 (N.D. Cal. Nov. 29, 2006) (objective evidence of emotional distress not required), ordered vacated,

The only Eleventh Circuit case cited by Experian with regard to the "standard" for determining whether emotional distress was compensable is *Lodge v. Kondaur Capital Corp.*, 750 F.3d 1263 (11ᵗʰ Cir. 2014).  As Experian points out in note 7 in its brief, the standard in *Lodge* was established for the violation of a bankruptcy stay under the bankruptcy code, not an FCRA claim.  No 11ᵗʰ Circuit FCRA cases are cited by the Defendant for the proposition that Plaintiff has failed to meet any standard to recover for emotional distress.

For the sake of argument, even if this Court were to find that the Plaintiff some how has failed to establish actual damages despite his evidence of mental distress and physical pain, a reasonable jury after hearing the evidence in this case, could determine that, through its intentional policies and procedures, Experian willfully refused to conduct a reinvestigation of the Plaintiff's dispute.  Congress

---

2006 WL 3691596 (N.D. Cal. Dec. 10, 2006) (vacated at plaintiff's request); King v. Asset Acceptance, L.L.C., 452 F. Supp. 2d 1272, 1281 (N.D. Ga. 2006) (plaintiff's testimony alone may be sufficient to defeat summary judgment); Waddell v. Equifax Info. Serv., L.L.C., 2006 WL 2640557, at *4 (D. Ariz. Sept. 14, 2006) (same); Centuori v. Experian Info. Solutions, Inc., 431 F. Supp. 2d 1002, 1010, 1011 (D. Ariz. 2006) (same); Allen v. Experian Info. Solutions Inc., 2006 WL 1388757, at *4 (S.D. Ill. May 12, 2006) (affidavits of plaintiff and his wife contained sufficient details regarding physical and emotional harm to defeat summary judgment); Jordan v. Equifax Info. Serv., L.L.C., 410 F. Supp. 2d 1349 (N.D. Ga. Jan. 18, 2006); Graham v. CSC Credit Serv., Inc., 306 F. Supp. 2d 873, 880 (D. Minn. 2004) (consumer's testimony about his frustration, anxiety, and humiliation created an issue of fact regarding his damages for emotional distress).Wells v. Craig & Landreth Cars, Inc., 2012 WL 6487392 (W.D. Ky. Dec. 13, 2012) (denying summary judgment predicated in part on damages being limited to plaintiff's own testimony regarding her emotional distress caused by impermissible access); Bradshaw v. BAC Home Loans Serv., Ltd. P'ship, 816 F. Supp. 2d 1066, 1076 (D. Or. 2011) (plaintiffs' own description of the emotional distress they suffered due to credit denials adequate to withstand summary judgment).

has provided a remedy – statutory damages of $100 - $1,000 per violation, attorneys' fees, costs, and other forms of relief, including punitive damages, – to any consumer as to whom the CRA willfully fails to comply with the reinvestigation and notice requirements. 15 U.S.C. § 1681n.  In that instance, a plaintiff need not prove any actual damages in order to recover.

**III.   Plaintiff has produced evidence that Experian's conduct was willful**

Under section 1681i(a) of FCRA, a CRA, like Experian, confronted with a consumer's dispute must (1) conduct a reasonable reinvestigation, ***and*** (2) provide the consumer with notice of the reinvestigation results.  In this case Experian admits that (1) it received Plaintiff's Dispute regarding the PRA account; and (2) it took no action to reinvestigate or to provide a results notice to Plaintiff. That triggers liability for a violation of the reinvestigation requirement imposed by section 1681i(a).

As stated before, Experian's excuse for refusing to reinvestigate is that it found Plaintiff's Dispute to be "suspicious." That excuse is both unrecognized by the law and unsupported by the facts.

Section 1681i(a) has no exception for "suspicious" requests. The statute's only carve-out is for requests deemed "frivolous" or "irrelevant" (15 U.S.C. § 1681i(a)(3)) – and even then, the CRA must ***notify*** the consumer that the dispute

has been found to be frivolous or irrelevant, ***and*** must state the reasons for that determination. 15 U.S.C. § 1681i(a)(3)(B). Experian admits that its "suspicious" determination was not a determination that Plaintiff's dispute was "frivolous" or "irrelevant."  Scott Depo., p. 72. And, even if it did so, Experian did not comply with section 1681i(a)(3)(B) by providing a statement to Plaintiff of the reasons the request was deemed suspicious. Experian's responsive letter of April 15, 2015 contained no such statement of reasons.  Exhibit 6 attached to Scott Depo.

The FCRA does not allow CRAs to refuse to reinvestigate based on suspiciousness – and even if it did so, the CRA would at least be required to state the reasons for the determination, something Experian admits it did not do.

Since Experian's position is not even arguably justified in law or fact, Plaintiff is also entitled to a determination that, based on the factual record, Experian's failure to reinvestigate was "willful" under FCRA. Under *Safeco Ins. Co. v. Burr*, 551 U.S. 47, 57 (2007) the willfulness standard which triggers statutory damages under FCRA is a recklessness standard: "where willfulness is a statutory condition of civil liability, we have generally taken it to cover not only knowing violations of a standard, but reckless ones as well." The *Burr* standard asks whether the FCRA defendant's conduct stemmed from an "objectively unreasonable" interpretation of the law. *Burr*, 551 U.S. at 68-69. Thus, where the

25

FCRA defendant is being held responsible for a statutory duty for which there is a "dearth of [regulatory] guidance and the less-than-pellucid statutory text," 551 U.S. at 70, a willfulness finding is unjustified. Where the statute is clear or the guidance unambiguous, willfulness is justified.

In this case, Experian's FCRA violation was willful. Experian has admitted that it refused to comply with section 1681i's reinvestigation and notice requirements for Plaintiff. Its only justification is a "suspiciousness" assertion for which there is no exclusion in the statute, and which is baseless on the facts. Experian has not once offered any explanation as to why Plaintiff's Dispute was deemed "suspicious." The closest Experian gets is in its Brief, in which Experian says of Plaintiff's dispute: "[t]he letter envelope had computer-generated postal labels and lacked a postmark, in particular a postmark corresponding to the same geographic area as the return address on the envelope."  Defendant's Brief at pp. 12-13.  Were those things considered by Experian's mail room employees when they decided Plaintiff's dispute was suspicious?  Experian doesn't say – because it does not know who made the "suspicious" determination or what factors were considered. In any event, the only exclusion in FCRA for commencing a reinvestigation lies if the CRA determines the dispute is "frivolous" or "irrelevant." 15 U.S.C. § 1681i(a)(3) – which Experian is not claiming in this case. And even if

the CRA were so to determine, the CRA must send the consumer a notice setting forth "the reasons for the determination[.]" 15 U.S.C. § 1681i(a)(3)(C)(i). Experian's notice to Plaintiff did *not* state a reason for the suspiciousness conclusion, so Experian cannot claim a "reasonable interpretation of FCRA's coverage." *Fuges v. Sw. Fin. Servs., Ltd.*, 707 F.3d 241, 248 (3d Cir. 2012).

Experian's past conduct with respect to FCRA's reinvestigation requirement, moreover, suggests just the opposite of some good-faith interpretation of unclear law – it bespeaks habitual rule-breaking. In 2012, Experian was sued in a class action in the United States District Court for the Eastern District of Virginia for requiring consumers who request section 1681i reinvestigations to supply their Social Security Numbers and other identifying information before Experian would even initiate their reinvestigations. Of course, FCRA doesn't allow a CRA to do that, either. Experian settled that case with a national class *(James v. Experian Information Solutions, Inc.*, Case No. 12-cv-000902 (E.D. Va.)) and agreed, as a part of the settlement, to a Consent Order and Injunction barring Experian from requesting verifying information from consumers unless necessary to find the consumer's credit file.

Experian's experience in *James* augured its present recidivism. Now, instead of requiring Social Security Numbers (Experian's conduct before *James*, from

which it is now enjoined), Experian is refusing to initiate reinvestigations on baseless "suspiciousness" determinations.   The FCRA does not allow CRAs to refuse to reinvestigate based on suspiciousness[6] – and even if it did so, the CRA would at least be required to state the reasons for the determination, something Experian did not do. Experian's refusal to grant Plaintiff his reinvestigation and notice under section 1681i was willful and in accordance with its policies and procedures.

## CONCLUSION

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper only when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. *Celotex Corp v. Catrett*, 477 U.S. 317, 322, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986). "A dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the

---

[6]     As stated Plaintiff's Motion for Summary Judgment, Experian will protest that CRAs need a "suspiciousness" exemption under section 1681i to protect consumers. We offer three responses. *First*, a CRA facing a truly suspicious request can comply with FCRA *and* protect the consumer, by sending a letter to the consumer stating that the request may be suspicious, but that the CRA is commencing a reinvestigation - but cautioning that if the consumer did not send in the request, the consumer should call the CRA immediately to stop the process. *Second*, it's hard to imagine how a consumer's request to correct a trade line would ever be suspicious – a truly suspicious request would ask the CRA to disclose information from the consumer's credit file, not ask the CRA to alter a credit entry already in the consumer's credit file (an entry the consumer knows about, since he's disputing it). *Finally*, Experian's argument for a "suspiciousness" exemption is really one to be made to Congress for an amendment to FCRA section 1681i; there is *no* exemption under existing law.

nonmoving party.'" *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986).   A reasonable jury, viewing the evidence in this case, could return a verdict for the Plaintiff based upon Experian's willful non-compliance with the FCRA and Plaintiff's resulting damages.   For the reasons stated above, Experian's Cross-Motion for Summary Judgment should be denied.

RESPECTFULLY SUBMITTED this the 12th day of August, 2016.

/s/ *W. Whitney Seals*
Attorney for Plaintiff

**OF COUNSEL:**

W. Whitney Seals
**PATE & COCHRUN LLP**
P.O. Box 10448
Birmingham, AL 35202-0448
Phone: (205) 323-3900
whitney@plc-law.com

29

## CERTIFICATE OF SERVICE

I hereby certify that on this the 12 August 2016, the foregoing filed using the CM/ECF case management system to the following attorneys of record:

**Attorneys for Equifax**
Charles Campbell, Esq.
Misty Peterson, Esq.
KING & SPALDING LLP
1180 Peachtree Street NE
Atlanta, GA 30309-3521
404-572-4600
Fax: 404-572-5100
Email: mpeterson@kslaw.com

Kirkland E. Reid, Esq.
Jones, Walker, Waechter,
Poitevent, Carrere & Denegre, LLP
11 N. Water Street, Ste. 1200
Mobile, AL 36602
(251) 439-7513
(251) 433-1001
kreid@joneswalker.com

**Attorneys for Experian**
L. Jackson Young, Jr.
Ferguson, Frost, Moore & Young
1400 Urban Center Drive, Ste. 200
Birmingham, AL 35243
(205) 879-8722
(205) 879-8831
ljy@ffdlaw.com

Allison Fuller, Esq.
Jones Day
2727 North Harwood St.
Dallas, TX 75201
(214) 969-3762
afuller@jonesday.com

/s/W. Whitney Seals
OF COUNSEL

30