## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

SHAUN J. YOUNGER,        )
                       )
      Plaintiff,       )
                       )
v.                    )    Case No.:  2:15-cv-00952-SGC
                       )
EXPERIAN INFORMATION SOLUTIONS,  )
INC., et al.,            )
                       )
      Defendants.    )

## MEMORANDUM OPINION AND ORDER[1]

On June 5, 2015, Shaun Younger ("Plaintiff") filed this action against Portfolio Recovery Associates, LLC ("PRA"),[2] Equifax Information Services, LLC ("Equifax"), and Experian Information Solutions, Inc. ("Experian").  (Doc. 1).  Plaintiff asserts claims under the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA").  This matter is now before the court on the motion for partial summary judgment filed by Plaintiff (Doc. 36) and the motions for summary judgment filed by Equifax (Doc. 38) and Experian (Doc. 39).  The motions are fully briefed and ripe for review.  (Docs. 36, 38, 39, 41, 42, 43, 45, 46, 47).  Plaintiff agrees his § 1681e(b) claims against Experian and Equifax are due to be dismissed.  (Docs. 42 at 3; 43 at 4).  Accordingly, the court reviews the parties' motions only with regard to the remaining § 1681i claims.

Plaintiff states claims against both Experian and Equifax, all in violation of 15 U.S.C. § 1681i, for negligently, or in the alternative willfully, failing to delete inaccurate information in Plaintiff's credit file after receiving actual notice of such inaccuracies; failing to conduct a reasonable and lawful reinvestigation; failing to forward all relevant information to PRA; failing

---

[1] The parties have previously consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c).  (Doc. 16).

[2] Plaintiff later dismissed all claims against PRA, which is no longer a party to this action. (Docs. 34, 35).

to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file; and relying upon verification from a source they had reason to know was unreliable.  (Doc. 1 at ¶ 38).  Plaintiff states a separate claim against Experian for its intentional failure to conduct a reinvestigation of Plaintiff's credit file in violation of § 1681i(a)(1)(A).  (*Id.* at ¶ 37).  Plaintiff seeks damages, costs, and attorney's fees pursuant to 15 U.S.C. § 1681n for willful violations, or alternatively, damages and fees under § 1681o for negligent violations.  (*Id.* at ¶¶ 40-41).  Plaintiff claims he suffered mental and emotional pain and anguish, humiliation, and embarrassment.  (*Id.* at ¶ 39).  For the reasons stated below, Plaintiff's motion will be granted in part and denied in part, and Experian and Equifax's motions will be denied.

## I.    BACKGROUND AND RELEVANT FACTS

Plaintiff is an individual who resides in Jefferson County, Alabama.  (Doc. 1 at ¶ 2).  For purposes of the FCRA, Plaintiff is a "consumer," and Equifax and Experian are "credit reporting agencies" ("CRAs").  (*Id.* at ¶¶ 2, 7, 9).  At some time prior to the filing of this lawsuit, Plaintiff became indebted to HSBC Bank on a credit card account.  (*Id.* at 4).  On or prior to March 30, 2014, HSBC sold Plaintiff's debt to PRA.  (*Id.*).  On March 30, 2014, PRA filed suit (the "small claims suit") against Plaintiff in the District Court of Jefferson County, Alabama.  (*Id.*).  Upon motion by PRA, the small claims suit was dismissed on January 12, 2015.  (*Id.*).

On March 30, 2015, Plaintiff obtained a copy of his credit report from each of the three national CRAs.  (Doc. 38-1 at 4).  Plaintiff's Equifax credit report still contained a reference to Plaintiff's HSBC account and his PRA account.  (Docs. 38 at 8; 38-2 at 15).  The PRA account was listed as having a past due balance of $2,082.  (Doc. 38-2 at 15).  Plaintiff's Experian credit report listed both his HSBC account and his PRA account.  (Doc. 40 at 13).  On his Experian credit report, Plaintiff's PRA account was identified with a twelve-digit partial account number

in the "status" field and the report stated: "Collection account. $2,082 past due as of Mar 2015."

(*Id.*).

### A.  **Plaintiff's Letter**

On March 30, 2015, Plaintiff wrote to the three main credit reporting agencies, TransUnion, Equifax, and Experian, to dispute the PRA debt on his credit reports.  (*Id.*; *see also* Doc. 40 at 27-28).   Plaintiff provided his home address and identified the disputed entry as "PORTFOLIO RECOVERY ASSOC. Acct. Number HSBC-[----------]…. Balance: $2,082." (Doc. 40 at 27).[3]   Plaintiff gave the case number, filing and dismissal dates, and several other details about the small claims suit.  (*Id.*).   Plaintiff provided the name and address of the attorney who handled the small claims suit for PRA, as well as the contact information for the court. (*Id.*).   In conclusion, Plaintiff stated:

> I am asking pursuant to the Fair Credit Reporting Act that you investigate [PRA's] entry on my credit report and respond to me as provided by the Fair Credit Reporting Act.  To assist your investigation, my birth date is [--/--/----] and the last four digits of my Social Security number are [----].  Again, if there is any question as to whether or not I received an Order in my favor dismissing [PRA's] case against me with prejudice, I would direct you to contact [PRA's] attorney, the Judge that heard the case, or the Court Clerk's office, or simply review the enclosed order for case number 01-SM-901831.

(*Id.*).   Plaintiff signed the letter.  (*Id.* at 28).   Attached to the letter was a copy of the order of dismissal.  (*Id.* at 31).   The letter and its attachments were sent via certified mail from Plaintiff's attorney's office, and the envelope appears to have been processed by an automatic postage

---

[3] Plaintiff stated his PRA account number incorrectly by omitting two digits, the second and third, from the full, twelve-digit sequence.  (*Id.*; Doc. 40 at 13).   Thus, the last eight digits of the ten-digit account number identified in Plaintiff's dispute letter were identical to the last eight digits of the twelve-digit PRA account number on the credit report Experian generated on March 30, 2015.  (*Id.*).   Equifax's credit report listed the PRA account and the HSBC account, but the account numbers are redacted; the court finds no reference in the record to what account numbers were listed on Equifax's report.  (Doc. 38 at 8; *see generally* Docs. 38-2; 38-6).

machine.  (*Id.* at 32-33).   The return address provided in the body of the letter and on the envelope was Plaintiff's home address.  (*Id.* at 27, 32).

### B.  Equifax's Response to Plaintiff's Letter

Equifax forwarded Plaintiff's dispute letter and all the information he provided to PRA. (Doc. 38 at 9).   Through a corporate witness, Pamela Smith, Equifax stated it uses a system called "ACIS" to track consumer disputes.  (Doc. 38-2 at 3).   According to Smith, "If further investigation of the consumer's dispute is required, Equifax notifies the source of the information and advises it of the consumer's dispute."  (*Id.* at 4).   Equifax then asks the "data furnisher," in this case PRA, to investigate the consumer's dispute and advise Equifax if the account information is accurate.  (*Id.*).

Communication between Equifax and a data furnisher is usually accomplished via an Automated Consumer Dispute Verification ("ACDV") form, which is an industry standard letter used by all three of the nationwide CRAs.  (Doc. 38-2 at 4-5).   This letter format includes codes and form language, as well as a space for narrative commentary from the CRA employee processing the dispute.  (*Id.* at 5).   When a data furnisher receives an ACDV form from Equifax, the furnisher is required "both by its contract with Equifax and by the FCRA" to conduct its own investigation and report the results to Equifax in a timely manner.  (*Id.*).   By Smith's description, Equifax follows the response of the data furnisher.  (*Id.*) ("If a data furnisher advises Equifax to delete or otherwise update the account information, then Equifax takes the necessary action and notifies the consumer of the result.").   The consumer is advised of his right to have a statement added to the credit file if he or she disagrees with the results of Equifax's inquiry.  (*Id.* at 6).

Equifax asserts it conducted a reinvestigation based upon the information provided by Plaintiff in his dispute letter.   However, because Plaintiff's credit file did not include an independent record of PRA's small claims suit against him, Equifax did not undertake to verify

4

the disposition as set out in the dismissal order.  (Doc. 44-1 at 9).    According to Smith, unless a judgment or other court action is identified by a data furnisher, Equifax will not independently verify the outcome of a court case.  (*Id.* at 12).  Instead, Equifax forwarded the letter and its attachments to Serco, a company in India which processes certain information for Equifax.  (*Id.* at 15).  Although Equifax states Serco "initiate[s] reinvestigation processes on behalf of Equifax," Equifax does not know whether the assigned Serco agent actually reviewed the documents submitted by Equifax in this matter.  (*Id.* at 11, 15).

Equifax states that Serco employees in India are required to forward disputes to a legal team when they include a subpoena request or "some other type of Court order."  (*Id.* at 12).  Equifax has no record of whether the Serco employee who processed Plaintiff's dispute was trained on Equifax's policies, and Equifax does not know if such records exist.  (*Id.* at 21).  Serco employees do not have access to a telephone in order to investigate the disputes they are processing, but if they feel the matter needs to be "escalated," they have the ability to do that.  (*Id.* at 16).  Smith testified that while she could not be sure the Serco employee actually reviewed Plaintiff's file, it appears the employee assigned the file a dispute code, attached the documents Plaintiff had provided, and forwarded the dispute to PRA.  (*Id.* at 11).  Equifax declined to state whether it did any further processing of Plaintiff's dispute.  (*Id.* at 5).  PRA responded by confirming the accuracy of the balance on Plaintiff's report, past-due amount, identification information, and other details.  (Doc. 38-2 at 6).

On April 28, 2015, Equifax provided Plaintiff with the results of its inquiry.  (*Id.* at 7).  Equifax's April 28 report states the past due balance of $2,082 was "seriously past due and/or assigned to internal or external collections."  (*Id.* at 15).  Plaintiff did not respond to Equifax's April 28 letter.  (Doc. 38-1 at 5).  At the end of June 2015, Equifax stopped reporting the PRA account on Plaintiff's file at PRA's request.  (Doc. 38-2 at 7).  Equifax did not issue a consumer

credit report concerning Plaintiff to any third parties in the two years preceding the filing of the instant action.  (*Id.*).

### C.  **Experian's Response to Plaintiff's Letter**

On April 7, 2015, Experian received Plaintiff's dispute letter.  (Doc. 40 at 6).  According to Mary Methvin, a Senior Legal and Compliance Analyst employed by Experian, the letter "did not appear to have been sent by Plaintiff."  (*Id.*).  On April 15, 2015, Experian responded by sending Plaintiff a "suspicious mail notification letter."  (*Id.*).  The letter states the following:

> Dear SHAUN J YOUNGER
>
> We received a suspicious request in the mail regarding your personal credit report and determined that it was not sent by you.  Suspicious requests are reviewed by Experian security personnel who work regularly with law enforcement officials and regulatory agencies to identify fraudulent and deceptive correspondence purporting to originate from consumers.
>
> In an effort to safeguard your personal credit information from fraud, we will not be initiating any disputes based on the suspicious correspondence.  Experian will apply this same policy to any future suspicious requests that we receive regarding your personal credit information, but we will not send additional notices to you of suspicious correspondence.
>
> If you believe that information in your personal credit report is inaccurate or incomplete, please call us at 1 (855) 435-9429 to speak directly to an Experian consumer assistance representative.

(*Id.* at 35).  This letter was mailed to Plaintiff at the same home address he provided in his April 7 letter.  (*Id.*).  Experian had no further contact with Plaintiff prior to the filing of this case.  (*Id.* at 7).

On April 28, 2015, Experian received a notice from Equifax regarding PRA account "HSBC-[----]…"  (*Id.* at 53).  The notice indicated Plaintiff had disputed the account information and stated Equifax had completed an FCRA investigation.  (*Id.* at 54).  On June 10, 2015, pursuant to a communication from PRA, Experian deleted the PRA information from Plaintiff's file.  (*Id.*).  A consumer disclosure for Plaintiff's file generated on July 29, 2015, shows the HSBC account history but does not list the PRA account.  (*Id.* at 38-51).

### D.  <u>Damages</u>

Plaintiff initially sought damages for economic losses, as well as physical and mental anguish.  (Doc. 1 at ¶ 39).  However, following discovery, he has conceded he has no evidence of economic losses.  (Doc. 43 at 16).  Therefore, Plaintiff "brings claims only for the physical and mental anguish" he alleges he suffered as a result of Equifax and Experian's actions.  (Doc. 1 at ¶ 39; *see also* Doc. 42 at 16).

Plaintiff suffers from pre-existing nerve damage and testified stress causes him nerve pain and headaches, for which he sees Dr. Martin Jones at Brookwood Hospital.  (Doc. 39-3 at 31-32).  Plaintiff testified his nerve pain and headaches are a result of the stress caused by his indebtedness to PRA.  (*Id.* at 26).  Plaintiff was asked, "Besides sleeplessness and headaches, any other physical symptoms you claim to have suffered from as a result of stress caused by the defendants in this case?"  (*Id.* at 31).  He answered, "Like I say, pain, I've got nerve pain."  (*Id.*).  In addition to this exchange, Plaintiff related his suffering specifically to the conduct of Equifax and Experian. (*Id.* at 42, 64) (stress and related pain caused by Experian's "suspicious dispute" letter and Equifax's communication of PRA's false assertion that he still owed a debt).  Plaintiff also stated he does not suffer from these symptoms unless he is stressed.  (*Id.* at 31).  Plaintiff conceded it would alleviate his symptoms to know his PRA account was no longer reporting on his credit accounts and he did not seek to confirm whether this was happening after sending his March 30 dispute letter.  (Doc. 38-1 at 22-23).

## II.    STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  To demonstrate there is a genuine dispute as to a material fact that precludes summary judgment, a party opposing a motion for summary judgment must cite "to particular

parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c)(1)(A). When considering a summary judgment motion, the court must view the evidence in the record in the light most favorable to the non-moving party. *Hill v. Wal-Mart Stores, Inc.*, 510 F. App'x 810, 813 (11th Cir. 2013). "The court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3).

## III.   ANALYSIS

### A.   Statutory Framework

Section 1681i(a)(1)(A) provides:

> [I]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file … before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.

15 U.S.C. § 1681i(a)(1)(A).[4]

The CRA must promptly notify the data furnisher of any disputed information, and the CRA's notice to the furnisher must include "all relevant information regarding the dispute" that the CRA has received from the consumer. *Id.* § 1681i(a)(2). In conducting the reinvestigation, the CRA "shall review and consider all relevant information submitted by the consumer...with respect to such information." *Id.* § 1681i(a)(4). Information in a consumer's file which is found to be inaccurate must be "promptly" deleted or modified, and the CRA must notify the furnisher

---

[4] The term "file," when used in connection with a consumer's information, means "all of the information on that consumer recorded and retained by a consumer reporting agency regardless of how the information is stored." *Id.* § 1681a(g).

8

of the information. *Id.* § 1681i(a)(5). Within five (5) days after completing the reinvestigation, the CRA must provide the consumer with notice of the results and the consumer's rights relating to those results. *Id.* § 1681i(a)(6).[5]

A CRA may cease reinvestigating if it determines the consumer's dispute is "frivolous or irrelevant," including by reason of the consumer's failure to provide sufficient information to investigate the disputed information. *Id.* § 1681i(a)(3)(A). However, the CRA must notify the consumer within five (5) days if it determines the dispute is frivolous or irrelevant and terminates the reinvestigation. *Id.* § 1681i(a)(3)(B).[6]

"The FCRA creates a private right of action against [CRAs] for the negligent, *see* 15 U.S.C. § 1681o, or willful, *see* 15 U.S.C. § 1681n, violation of any duty imposed under the statute." *Collins v. Experian Info. Sols., Inc.*, 775 F.3d 1330, 1333 (11th Cir. 2015). A negligent violation permits actual damages and attorneys' fees. *Id.*; 15 U.S.C. § 1681o. In order to recover for a negligent violation, a plaintiff must show actual damages. *Collins*, 775 F.3d at 1335. Actual damages may include mental distress, even in the absence of out-of-pocket expenses. *See, e.g., Thomas v. Gulf Coast Credit Servs., Inc.*, 214 F. Supp. 2d. 1228, 1235 (M.D. Ala. 2002); *Jordan v. TransUnion, LLC*, 2006 WL 1663324, at *7 (N.D. Ga. Jun. 12, 2006); *cf. Taylor v. Corelogic Saferent, LLC*, 2014 WL 11930592, at *5 (N.D. Ga. Oct. 23, 2014) (finding no *prima facie* case where plaintiff testified of stress without further damages and stress was not connected to defendant's negligence).

---

[5] Though Plaintiff contends Experian failed to comply with the notice requirement of § 1681i(a)(6) as part of its failure to reinvestigate, he does not assert any claim for a violation of § 1681i(a)(6). *See* (Doc. 1 at ¶ 37).

[6] Further, the court notes that the express language of this subsection contemplates "terminating" a reinvestigation, as opposed to declining to reinvestigate in the first place.

Where the violation is willful, the FCRA provides for statutory damages of $100 - $1,000 per violation, attorneys' fees, costs, and other forms of relief, including punitive damages. 15 U.S.C. § 1681n. A willful violation of the FCRA does not require a showing of actual damages. *Levine v. World Fin. Network Nat. Bank*, 437 F.3d 1118, 1124-25 (11th Cir. 2006) (rejecting common law pleading rules as to an FCRA claim and holding plaintiff adequately alleged damages element of claim by asserting violation was willful and citing § 1681n).[7] "[T]he existence of compensable emotional distress is relevant to the amount of damages a plaintiff will ultimately recover," and a standalone claim for emotional distress is facially sufficient even though it does not allege physical injury. *Id.* at 1124; *see also Moore v. Equifax Info. Servs., Inc.*, 333 F. Supp. 2d 1360, 1365 n.3 (N.D. Ga. 2004) (noting damages for emotional distress are recoverable even if plaintiff suffered no out-of-pocket losses).

Under *Safeco Ins. Co. v. Burr*, 551 U.S. 47 (2007), the "willfulness" standard set forth in § 1681n encompasses not only "knowing" violations of the statute but also those committed in "reckless disregard" of the statute's requirements. *Id.* at 57. In other words, a "reckless disregard of a requirement of FCRA would qualify as a willful violation" within the meaning of § 1681n(a). *Collins*, 775 F.3d at 1335 (quoting *Safeco*, 551 U.S. at 71). A company violates the FCRA where its action, based on a reading of the statute's terms, is more than "merely careless" and, instead, it engages in conduct which amounts to an "objectively unreasonable" view of the company's duties under the statute. *Safeco*, 551 U.S. at 69. In *Safeco*, the defendant's policy stemmed from a reading of the FCRA that was "flawed" but "ha[d] a foundation in the statutory text" and, thus, was not objectively unreasonable. *Id.*

---

[7] The court notes the FCRA was amended in 1996 to include statutory damages for a willful violation; as such, cases predating the 1996 amendments do not account for the possibility of a willfulness claim which succeeds in the absence of actual damages. *See Beaudry v. TeleCheck Servs., Inc.*, 579 F.3d 702, 707-708 (6th Cir. 2009) (citing *Cahlin v. Gen'l Motors Acceptance Corp.*, 936 F.2d 1151, 1160-61 (11th Cir. 1991)).

10

**B. Equifax**

Equifax asserts it is entitled to summary judgment as to willfulness because it conducted a reinvestigation of Plaintiff's dispute.  (Doc. 38).  Equifax further asserts Plaintiff cannot prove actual damages and, accordingly, it is entitled to summary judgment as to his claims for negligence, as well.  (*Id.*).  Plaintiff's motion for partial summary judgment does not address his claims against Equifax.  (Doc. 36).

1. Willfulness

Equifax asserts Plaintiff's § 1681i(a) claim fails as to willfulness because it conducted a reinvestigation.  In other words, Equifax asserts that at most, Plaintiff can recover for negligence. (Doc. 38 at 20-22).   Where a CRA relies entirely on a furnisher's response to disputed information without conducting an investigation of its own, the CRA's conduct can support a claim for willfulness.  *Lazarre v. JPMorgan Chase Bank, N.A.*, 780 F. Supp. 2d 1330 (S.D. Fla. 2011) (jury could conclude reinvestigation was not "reasonable" under § 1681i(a) where defendant made no effort of its own to verify disputed information).   Relying solely on the response of a data furnisher does not automatically rise to the level of willfulness but at least presents a jury question as to negligence.  *Collins*, 775 F.3d at 1336.

Plaintiff responds that, because he provided a copy of the favorable court order with his dispute, Equifax had actual knowledge its information was incorrect.  (Doc. 43 at 14-15).  Thus, its purported reinvestigation amounts to a "knowing disregard for the truth," which establishes malice.  (*Id.*) (citing, e.g., *Embrey v. First Franklin Fin. Corp.*, 2013 WL 1289401, *5 (S.D. Fla. Mar. 12, 2013) and *Kamps v. Midland Funding, LLC,* 2013 WL 622505 (N.D. Ala. 2013)).

Though Plaintiff provided a copy of the order in his favor, that document, standing alone, would not have been sufficient for Equifax to determine whether Plaintiff's account should be deleted.  As Equifax points out, a state court dismissal does not necessarily mean the underlying

indebtedness was satisfied or erased.  (*See* Doc. 42 at 4 n.1).  It could have been that Plaintiff's suit was dismissed because it was barred by a procedural doctrine, such as collateral estoppel, or an applicable limitations period, and not because Plaintiff was no longer indebted to PRA.  Thus, the evidence does not establish conclusively that Equifax had actual knowledge the disputed information was inaccurate.

Nevertheless, Equifax did have sufficient information to independently verify the disputed account.  Plaintiff provided the small claims court complaint listing the correct PRA account number, as well as a copy of the order dismissing the case against Plaintiff with prejudice.  (Doc. 44-1 at 5, 18).  Equifax states the furnisher, here PRA, "is typically in the best position to investigate a dispute" and, thus, Equifax was not unreasonable in deferring to PRA's assertion that Plaintiff still owed the debt.  (Doc. 38-2 at 4).

Equifax points to the *Collins* case, in which the Eleventh Circuit declined to hold a CRA liable where it relied on false information from a creditor who failed to adequately reinvestigate a dispute.  But in this case, unlike in *Collins*, Equifax was provided information it could have used to reinvestigate directly without relying solely on PRA's response.  It could have called PRA's attorney, the court, or Plaintiff himself to request documents showing the basis for the dismissal of PRA's claim against Plaintiff.  The court notes that under § 1681i(a)(4), conducting a "reasonable reinvestigation" requires the CRA to "consider and review" all relevant information submitted by the consumer.  Therefore, though the court declines to conclude as a matter of law that Equifax had actual knowledge Plaintiff's credit file contained inaccurate information, Equifax clearly had information it could have chosen to act upon.

Equifax conducted a reinvestigation in that it caused the information Plaintiff provided in his dispute to be forwarded to PRA with a request for verification.  Accordingly, Plaintiff has not shown an outright avoidance of Equifax's duties under the FCRA.  However, there is a dispute as

to whether, by merely forwarding the contents of Plaintiff's letter to PRA, Equifax conducted a reasonable reinvestigation of Plaintiff's dispute.  Accordingly, Equifax's motion is due to be denied to the extent it relies on the assertion Plaintiff cannot show a willful violation.

### 2. Damages

Equifax asserts it is entitled to summary judgment on Plaintiff's negligence claims as well because Plaintiff has no actual damages and, without economic damages, he cannot recover noneconomic damages.  (Doc. 38 at 23).  Plaintiff testified he suffered stress as a result of Equifax's communication of PRA's false assertion that he still owed a debt, and this stress caused nerve pain.  (Doc. 39-3 at 31, 42, 64).  Thus, there is at least a factual dispute as to whether Plaintiff suffered damages in the form of physical pain and mental anguish.  Plaintiff may recover for negligence where he has suffered actual damages and for statutory damages in the event Equifax's conduct is found to be willful.  Because there is a factual dispute as to both levels of intent with regard to Equifax's conduct, Equifax's motion for summary judgment is due to be denied.[8]

### C. Experian

Experian moves for summary judgment asserting its duty to reinvestigate under § 1681i(a)(1)(A) was not triggered by Plaintiff's March 30 letter and, thus, both his negligence and willfulness claims fail.  To the extent Experian's duty to reinvestigate was triggered by Plaintiff's letter, its conduct was not willful.  (Doc. 39).  Experian further asserts Plaintiff did not

---

[8] Equifax points to *Nagle v. Experian Sols., Inc.*, 297 F.3d 1305 (11th Cir. 2002), in which the Eleventh Circuit reversed an award of over $100,000 in attorneys' fees where a jury found the defendant liable but did not award actual or punitive damages, and the trial court also declined to enter any damages.  *Nagle* involved only a § 1681o negligence claim, not a § 1681n willfulness claim.  Further, as stated above, the court finds there is a factual dispute as to Equifax's intent, and thus, declines to rely on *Nagle* in assessing whether Plaintiff may recover damages.

suffer cognizable damages and, thus, Plaintiff's claims against Experian must be dismissed. (*Id.*).

Plaintiff moves for partial summary judgment as to his claim against Experian for a willful violation of § 1681i(a)(1)(A), asserting there is no genuine dispute as to the following material issues of fact: (1) Plaintiff wrote to Experian, disputing an entry on his credit report concerning a PRA account; (2) Experian received Plaintiff's dispute letter on April 7, 2015; (3) pursuant to its policies and procedures, Experian responded on April 15, 2015, claiming the request was suspicious, and failed to initiate a reinvestigation; (4) Experian did not consider Plaintiff's dispute letter to be frivolous or irrelevant; and (5) no further correspondence was sent by Experian to Plaintiff beyond its April 15 letter.  (Doc. 36 at 3-4).[9]  The court concludes Experian violated its duty to reinvestigate.  However, for the reasons discussed below, judgment cannot be entered as a matter of law as to Plaintiff's § 1681i(a)(1)(A) claim because there remains a genuine dispute as to Experian's intent and Plaintiff's damages.

### 1.   Duty and Breach - Plaintiff's Dispute Letter and Experian's Response

Experian does not dispute that it received Plaintiff's March 30 letter.  (Doc. 39 at 12); *see also* (Doc. 37-1 at 7).  However, Experian asserts the March 30 letter was not a direct consumer notification of a dispute under § 1681i(a)(1)(A) because the letter came from Plaintiff's attorney's office.  (Doc. 40 at 6) ("On April 7, 2015, Experian received mail correspondence regarding Plaintiff dated March 30, 2015, that did not appear to have been sent by Plaintiff.").  The letter was sent via certified mail and appears to have been processed through an automatic postage machine.  (*Id.* at 32-33).  However, the envelope and its contents do not contain

---

[9] The court notes the standard for a negligent violation of § 1681i(a)(1)(A) is lower than for a willful violation.  However, Plaintiff's partial motion only seeks judgment as to his claim for willfulness, not for negligence.  (Doc. 36 at 1).

counsel's letterhead and do not bear any other markings identifying Plaintiff's attorney.  (*Id.* at 27-28, 32-33).  The body of the letter begins:

> My name is Shaun J. Younger and I live at [ ], Birmingham, Alabama 35208.  I have been at that address for over two years.  I am writing to dispute an entry on my credit report. … My dispute is as follows…

(*Id.* at 27).  Plaintiff made no reference to his attorney, directed that the response be sent to him at his home address, and signed the letter in his own name.  (*Id.* at 27-28).  Plaintiff referred to himself throughout in the first person and described the dispute as "my dispute."  (*Id.*).  Further, Experian responded to Plaintiff at his home address, which was the same in the March 30 letter as it was in Experian's own records.  (*Id.* at 10, 21, 27, 32, 35).  For these reasons, the court concludes no reasonable factfinder could find the March 30 letter's contents presented anything to suggest it was not "from" Plaintiff.

Experian points out that the Federal Trade Commission ("FTC") has issued guidance suggesting certain attorney communications constitute "third party communication" of a kind that does not trigger the duty to reinvestigate a consumer credit file.  (Doc. 39-5 at 26).  This language is non-binding agency commentary.  Further, as other courts have concluded, the FTC's guidance does not apply to attorney letters written on a plaintiff's behalf, since the guidance in question relates to credit repair organizations and other third parties which do not have an attorney-client relationship with the consumer.  *See, e.g., Pinner v. Schmidt*, 617 F. Supp. 342, 347 (E.D. La. 1985) (*aff'd in part and rev'd on other grounds*, 805 F.2d 1258 (5th Cir. 1986)) (an attorney may represent a consumer in making a "direct dispute" under § 1681i(a)(1)(A)); *but cf. Klotz v. TransUnion, LLC*, 246 F.R.D. 208 (E.D. Pa. 2007) (plaintiff who merely signed a letter written by a credit repair organization without checking its contents for accuracy had not "directly disputed" the accuracy of his report).

15

Plaintiff concedes he wrote the March 30 letter in consultation with his attorney.  (Doc. 42 at 14).  However, it is clear he participated and, thus, did not "merely convey" his dispute to a third party who then contacted the CRAs with no input from Plaintiff.  Further, from the contents of the letter, it is not apparent an attorney was involved at all.  Finally, although Experian states the letter was suspicious because the envelope it came in had computer-generated markings and lacked a postmark (Doc. 47 at 10), Experian cannot show who determined the letter was suspicious or why.  (Doc. 37-1 at 14-15; 30-31).  Thus, even if the FTC's guidance is helpful as persuasive commentary, it does not appear to apply here; rather, it addresses a situation in which the consumer "merely conveys" his dispute to a third party, who then raises the dispute with the CRA.

Next, Experian contends the reinvestigation duty was not triggered because Plaintiff's March 30 letter referred to the wrong PRA account number and, thus, did not identify any inaccuracy in his credit file.  (Doc. 41 at 4) (asserting the identification of a factual inaccuracy on the consumer's credit report is a "threshold element" without which Plaintiff cannot make a prima facie case).  However, Experian concedes it never actually reviewed the contents of Plaintiff's letter.  According to Experian's representative, Jason Scott, the "suspicious letter" response was sent without regard to the dispute letter's contents.  (Doc. 37-1 at 11).  Scott confirmed there is no evidence anyone at Experian read the contents of the letter.  (*Id.* at 28).  Even if someone had read it, Experian maintains the result would have been the same, although Scott could not say who made the determination that Plaintiff's letter was suspicious or on what basis.  (*Id.* at 14-15, 28).   Scott's only basis for testifying that the "suspicious letter" determination was made at all was that the letter Plaintiff received in response is a form letter sent pursuant to Experian's policy when it identifies a communication as suspicious.  (*Id.* at 17).  Accordingly, there is no dispute that Experian's "suspicious letter" procedure, by which it

16

declined to reinvestigate upon Plaintiff's request, was followed without regard to the substance of Plaintiff's dispute.

As Plaintiff points out, the duty to reinvestigate is triggered where "the completeness or accuracy of any item of information contained in a consumer's file" is disputed. § 1681i(a)(1)(A). The term "file," when used in connection with a consumer's information, means "all of the information on that consumer recorded and retained by a consumer reporting agency regardless of how the information is stored." *Id.* § 1681a(g). Thus, the duty can be triggered by a dispute as to various types of information so long as the dispute identifies information which is in the consumer's file.

Plaintiff's letter contained sufficient information to determine he was disputing the PRA account in his credit file. (Doc. 40 at 27-31). Plaintiff's dispute letter referenced a partial account number which substantially matched the PRA account number in his file. (*Id.*). The letter further stated that PRA owned the account but HSBC Bank of Nevada, N.A. was the original creditor. (*Id.*). Plaintiff also provided the matching past due amount of $2,082 and enclosed copies of PRA's complaint and the order of dismissal. (*Id.*). It is clear Experian could have identified the account Plaintiff disputed, regardless of his error in listing the correct number, by referring to the account holder information (PRA), the original creditor (HSBC), or the account balance. Although there may be a dispute as to whether the account number Plaintiff included is similar enough that Experian should have recognized it in Plaintiff's file, there is no genuine dispute as to whether Plaintiff's letter disputed "the completeness or accuracy of any item of information" in his file. § 1681i(a)(1)(A). This dispute triggered Experian's duty to conduct a reinvestigation, which Experian failed to do.

17

2. <u>Intent, Causation, and Damages</u>

Experian concedes it did not initiate a reinvestigation of Plaintiff's file, and its response was made pursuant to its own policies and procedures. (Doc. 37-1 at 25-26). Plaintiff asserts Experian's response constitutes a breach of the duty set forth in § 1681i(a)(1)(A). (Doc. 36). Experian contends Plaintiff cannot establish that any violation of § 1681i(a)(1)(A) was willful or negligent and, accordingly, he is not entitled to summary judgment. (Doc. 41 at 5). Experian bases these assertions on the fact that it never published an inaccurate report and it deleted the disputed item. Further, Experian asserts Plaintiff cannot show its policies and procedures were based on an objectively unreasonable interpretation of the law, as is required under *Safeco* for a showing of willfulness.[10]

The FCRA provides a procedure for CRAs to follow if they determine a dispute is "frivolous or irrelevant," but Experian concedes it did not determine Plaintiff's letter constituted a frivolous or irrelevant dispute. Experian points to no other foundation in the statutory text for a procedure by which it may place the burden on a consumer to do something beyond sending a dispute letter in order to trigger the duty to reinvestigate. Experian followed a procedure which looks to whether an envelope is suspicious and, without regard to the envelope's contents, follows procedures which do not track the prescriptions of the FCRA. While Experian points to several cases which found reinvestigations to be reasonable even though they did not result in correcting an inaccuracy in the plaintiff's credit file, these cases are not on point because here, Experian conducted no reinvestigation at all.

---

[10] As to whether Experian had ever prepared an inaccurate report, the Eleventh Circuit held that "the FCRA contains no requirement that the disputed information be published to a third party in order for a consumer to recover actual damages under § 1681i(a)." *Collins*, 775 F.3d at 1335. Accordingly, Experian's assertion that it did not prepare an inaccurate report is immaterial.

In its briefing, Equifax points to the Eleventh Circuit's holdings in *Collins* for the proposition that Plaintiff cannot show willfulness where there is no evidence the CRA acted willfully.  (Doc. 38 at 20-22).  *Collins* is helpful as it relates to Experian's conduct, as well, because it addresses a situation with similarities to the instant case.  In *Collins*, judgment had been entered against a creditor in favor of the plaintiff in the small claims court of Jefferson County, Alabama.  *Collins*, 775 F.3d at 1332.  The plaintiff, Collins, then wrote Experian to dispute the debt, notifying it of the judgment in his favor and providing information about the suit, including the creditor's attorneys' contact information and the case number.  *Id.*  Experian's corporate representative testified that, due in part to a ZIP code discrepancy on the envelope, it deemed the plaintiff's letter to be suspicious and sent him a form letter substantially the same as the one Plaintiff received here.  *Id.*  Collins responded to the "suspicious letter" communication, repeating his point that the account information in his file was wrong and demanding it be deleted—as he had done in his initial letter.  *Id.*  In response to the second letter, Experian sent an ACDV form to the creditor.  *Id.*  The creditor wrongly responded that the debt was still valid, and Experian did nothing further to investigate Collins's claim.  *Id.*  Experian later deleted the item from Collins's file for other reasons.  *Id.*

As to the willfulness claim in *Collins*, the Eleventh Circuit reviewed Experian's conduct in reinvestigating the dispute.  The district court denied summary judgment, ruling that Experian's reinvestigation could support a willfulness claim.  The Eleventh Circuit held that by doing nothing more than contacting the creditor with an ACDV form regarding the disputed entry, Experian "might have been negligent, but willfulness or recklessness is a higher standard that has not been met in this case."  *Id.* at 1336.  The Eleventh Circuit cited *Safeco* stating that a company's action is a willful violation if it "shows that the company ran a risk of violating the

law substantially greater than the risk associated with a reading that was merely careless." *Id.* (quoting *Safeco*, 551 U.S. at 69).

*Collins* is distinguishable because there, Experian reinvestigated the plaintiff's dispute. *Id.* at 1332-33.  Here, no reinvestigation occurred whatsoever.  Instead, through its "suspicious letter" response, Experian attempted to place the burden on Plaintiff such that he would have had to send a second dispute to trigger a reinvestigation.  Experian argues that, because Plaintiff did not dispute the information in his file twice, he is not entitled to relief.  The plaintiff in *Collins*, by contrast, did send a second dispute letter, and it is the resulting reinvestigation that the Eleventh Circuit evaluated.  The Eleventh Circuit did not address whether Experian's policy or practice of requiring a consumer to submit a second dispute letter amounts to an objectively unreasonable interpretation of the FCRA.

Experian's policy, such as it is, is not supported by the statutory language of the FCRA. Although the FCRA provides a mechanism by which a CRA can determine a dispute is "frivolous or irrelevant" and decline to reinvestigate, Experian did not comply with that provision here.  To the extent Experian followed a procedure, a reasonable factfinder could determine that procedure was "objectively unreasonable" and, therefore, willful.  *Safeco*, 551 U.S. at 69-71.  A reasonable factfinder could also conclude that, though "flawed," Experian's procedure was "merely careless" and, thus, its conduct was only negligent.  *Id.* at 78.

Regarding damages, Plaintiff testified he suffered nerve pain caused by the stress he experienced due to the inaccuracy in his credit file and Experian's response to his dispute letter. (Doc. 39-3 at 42).  Thus, Plaintiff has offered evidence of physical injury (i.e., the exacerbation of his preexisting nerve damage) and emotional distress.  For a willfulness claim, emotional distress is facially sufficient even where it does not involve physical injury.  *Levine*, 437 F.3d at 1124-25.  To the extent Experian's liability is limited to Plaintiff's negligence claim, actual

damages will be required in order for Plaintiff to recover.  However, Plaintiff's testimony as to nerve pain, headaches, and other physical injury is sufficient to raise a dispute as to actual damages.  *See Thomas*, 214 F. Supp. 2d. at 1235.  Accordingly, Plaintiff has raised a dispute as to damages which could support his negligence claim against Experian.  To the extent Plaintiff asserts a willfulness claim, statutory damages are available, and he is not required to show actual damages.  *Id*.

For these reasons, Experian's motion is due to be denied.  Although the court concludes Experian breached its duty under § 1681i(a)(1)(A), factual disputes remain as to Experian's intent and Plaintiff's damages.  Accordingly, Plaintiff's motion is denied as well.

## IV.   **CONCLUSION**

Plaintiff's motion (Doc. 36) is **GRANTED IN PART** to the extent that the court finds Plaintiff has shown there is no genuine dispute that (1) Plaintiff submitted a dispute to Experian pursuant to 15 U.S.C. § 1681i(a)(1)(A); and (2) Experian violated its duty to reinvestigate on the basis of Plaintiff's dispute.  Plaintiff's motion (Doc. 36) is **DENIED IN PART** to the extent there remain factual issues as to Experian's intent and Plaintiff's damages resulting from Experian's conduct.  Equifax's motion (Doc. 38) and Experian's motion (Doc. 39) are **DENIED** for the reasons stated above.

**DONE** this 22nd day of September, 2017.

*Staci G. Cornelius*
STACI  G. CORNELIUS
U.S. MAGISTRATE JUDGE