FILED

2018 May-11  PM 05:04
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

SHAUN YOUNGER,

v.

PORTFOLIO RECOVERY
ASSOCIATES, LLC, et al,

Defendant.

CASE NO.:
2:15-cv-00952-SGC

## DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION IN LIMINE

COMES NOW, Defendant Experian Information Solutions, Inc. ("Experian"), by and through undersigned counsel, hereby responds to Shaun J. Younger's Motion in Limine (Doc. 99) ("Plaintiff's Motion").  Plaintiff's Motion is essentially an omnibus motion in limine, seeking exclusion of evidence or references to nine separate topics.  Experian opposes Plaintiff's Motion.[1]

---

[1] Experian notified Plaintiff's counsel in advance of the filing of the Motion that Experian did not oppose Item No. 8, other information on Plaintiff's credit file, "so long as [Plaintiff's counsel was] not intending to foreclose [Experian] from pointing out the stress, etc., associated with those bad credit events."  2:30 p.m. (eastern time) May 7, 2018 Email from G. Hanthorn to J. Hubbard responding to motion/list provided by J. Hubbard at 2:20 p.m. eastern time and requesting a response by 7 p.m. central time.  Because Plaintiff's Motion included Item No. 8 without that carveout, Experian must assume that Plaintiff does seek to foreclose

**ARGUMENT**

Plaintiff's Motion should be denied for two overarching reasons. First, Plaintiff's Motion relies on a fundamental misunderstanding of what issues remain for the jury to decide. This Court granted in part Plaintiff's motion for summary judgment, and in doing so, effectively held that Plaintiff satisfied two of the four elements of a negligent noncompliance claim. (*See* Order (Doc. 58) at 21 ("Plaintiff has shown there is no genuine dispute that (1) Plaintiff submitted a dispute to Experian pursuant to 15 U.S.C. § 1681i(a)(1)(A); and (2) Experian violated its duty to reinvestigate on the basis of Plaintiff's dispute.").) In addition to those two elements, to prevail on his negligent noncompliance claim Plaintiff still needs to prove (1) that he was injured[2] and (2) that injury was proximately caused by Experian's conduct. *See Rumbough v. Experian Info. Sols., Inc.*, 626 F. App'x 224, 226 (11th Cir. 2015) ("[T]he district court correctly granted summary

---

(continued…)

Experian from introducing evidence and arguing that Plaintiff's other bad credit events during the same time period are associated with added stress, headaches, and the like, so Experian opposes Item No. 8 as well.

[2] *Nagle v. Experian Info. Sols., Inc.*, 297 F.3d 1305, 1306 (11th Cir. 2002) (actual damages are required to qualify as a "successful action to enforce any liability under this section [15 U.S.C. § 1681o, negligent violation]"); *In re: Cmty. Health Sys., Inc.*, No. 15-CV-222-KOB, 2016 WL 4732630, at *15 (N.D. Ala. Sept. 12, 2016) ("[15 U.S.C. § 1681o] does not impose liability for a negligent breach as to those who have not sustained actual damages").

judgment to [Defendant] because [Plaintiff] cannot show any alleged FCRA violations caused his purported damages."); *Crabill v. Trans Union, LLC*, 259 F.3d 662, 664 (7th Cir. 2001) ("Without a causal relation between the violation of the statute and the loss of credit, or some other harm, a plaintiff cannot obtain an award of 'actual damages,' which is one of the remedies under the Fair Credit Reporting Act." (internal citations omitted) (citing *Philbin v. Trans Union Corp.*, 101 F.3d 957, 963 (3d Cir. 1996); *Casella v. Equifax Credit Info. Servs.*, 56 F.3d 469, 473 (2d Cir. 1995); *Cahlin v. General Motors Acceptance Corp.*, 936 F.2d 1151, 1160-61 (11th Cir. 1991))); *Reeves v. Equifax Info. Servs., LLC*, No. 2:09CV43KS-MTP, 2010 WL 2036661, at *6 (S.D. Miss. May 20, 2010) ("An essential element that the plaintiff must establish for a claim under the FCRA is evidence of an injury and that the injury was proximately caused by a consumer reporting agency." (citing *Cousin v. Trans Union Corp.*, 246 F.3d 359, 369 (5th Cir. 2001))).  Absent this causal relationship, Plaintiff cannot prevail on his negligent noncompliance claim.

The causation inquiry for negligent noncompliance claims under the FCRA has two components: (a) the violation must be a cause in fact of the plaintiff's injury and (b) the violation must be the proximate cause of plaintiff's injury.  With respect to cause in fact, plaintiff's injury must have "result[ed] from [the] FCRA

3

violation." *Nagle*, 297 F.3d at 1307 (citing *Cahlin*, 936 F.2d at 1160); *see id.* at 1307 ("We have previously recognized the importance attributed to damages in a FCRA cause of action by noting that failure to produce evidence of *damage resulting from a FCRA violation* mandates summary judgment." (emphasis added) (citing *Cahlin*, 936 F.2d at 1160); *accord Cahlin*, 936 F.2d at 1160-61 (plaintiff bears the burden of proving that the violation was "a causal factor" in the damage suffered); *Enwonwu v. Trans Union, LLC*, 364 F. Supp. 2d 1361, 1365-66 (N.D. Ga. 2005) ("As with most tort actions, a FCRA plaintiff must produce sufficient evidence from which a reasonable trier of fact could infer that the [violation] was a 'substantial factor' that brought about the [injury]." (citing Restatement (Second) of Torts § 431(a)), *aff'd*, 164 F. App'x 914 (11th Cir. 2006); *Matise v. Trans Union Corp.*, No. CIV.A.3:96-cv-3353-D, 1998 WL 872511, at *7 (N.D. Tex. Nov. 30, 1998) ("A plaintiff asserting an FCRA claim has the burden of proving that his damages were caused by the defendant's violations of the FCRA. To meet this burden, [Plaintiff] must show that the [the violation], rather than other lines in the [Defendant's] report or a report from a different CRA, caused his injury." (internal citations omitted)).

In addition to proving that the negligent noncompliance violation was a factual cause of Plaintiff's injury, the second piece of the causation inquiry is that

the negligent noncompliance violation must be the proximate cause of the injury. *See, e.g.*, *Nelson v. Am. Express Travel Related Servs., Inc.*, No. 2:08-CV-438-JHH, 2011 WL 13254100, at *10 (N.D. Ala. July 8, 2011) (defendant's "alleged negligence must have proximately caused [Plaintiff] some perceptible harm"); *Wagner v. BellSouth Telecomms., Inc.*, 520 F. App'x 295, 298 (5th Cir. 2013) (affirming the district court's award of summary judgment to defendant "on the ground that [Plaintiff] failed to establish actual damages that were proximately caused by [Defendant]"); *Reeves*, 2010 WL 2036661, at *6 ("[T]o recover for negligent violations under the FCRA, the plaintiff must prove that [the defendant] proximately caused him actual damages."). Proximate cause means the connection between the violation and the alleged injury cannot be too remote or indirect.

Evidence that the claimed injury – stress, sleeplessness, emotional distress – was also caused by other credit situations, life situations, and the like is highly relevant. *See, e.g.*, *Pundt v. Select Portfolio Servicing, Inc.*, No. C10-0159, 2011 WL 6396617, at *2 (N.D. Iowa Dec. 20, 2011) ("any argument that other possible sources of [plaintiff]'s emotional distress are not relevant to this case is meritless"); *Cotton v. AT&T Operations, Inc.*, No. 406-CV-438 CAS, 2007 WL 465625, at *2 (E.D. Mo. Feb. 8, 2007) ("The Court finds that plaintiff put her medical history at issue by seeking damages for emotional distress in her complaint."); *Walker v. Nw.*

*Airlines Corp.*, No. CIV.00-2604 MJD/JGL, 2002 WL 32539635, at \*3 (D. Minn. Oct. 28, 2002) ("[R]egardless of whether Plaintiff's mental or emotional condition is in controversy, his medical records may be nonetheless relevant if they shed light on other contributing causes of Plaintiff's emotional distress claims.").

Plaintiff does not discuss the relevance of the challenged evidence to his requirements to prove (i) cause in fact, (ii) proximate cause, and, in the event causation is proven, (iii) the amount of damages. Instead, throughout the Motion in Limine, Plaintiff relies almost exclusively on arguments about how certain evidence is not relevant to different particular issues, providing generic citations to cases involving, *e.g.*, "appeals to passion or prejudice" (Pl.'s Mot., Doc. 99, at 4) that are not anchored to proximate cause and damages issues. But "there is no rule of evidence which provides that testimony admissible for one purpose and inadmissible for another purpose is thereby rendered inadmissible; quite the contrary is the case." *United States v. Abel*, 469 U.S. 45, 56 (1984). Rather, "the Federal Rules of Evidence recognize that evidence may be admissible for one purpose but not admissible for another purpose." *F.D.I.C. v. Icard, Merrill, Cullis, Timm, Furen & Ginsburg, P.A.*, No. 8:11-CV-2831-T-33MAP, 2013 WL 1912838, at \*5 n.2 (M.D. Fla. May 9, 2013) (citing Fed. R. Evid. 105); *see also Boone v.*

*Harvey*, No. 1:03-CV-2916-ODE, 2006 WL 8433113, at *6 (N.D. Ga. Oct. 23, 2006) (same).

Much of the evidence Plaintiff's Motion seeks to exclude is relevant to Plaintiff's alleged claims of emotional distress injury and whether that injury was caused in fact and proximately caused by Experian's alleged negligent noncompliance. For example, Plaintiff's itemized damages list discloses that he's seeking damages for "mental anguish and emotional distress," "pain and suffering associated with his increased stress," "headaches and sleeplessness," and "escalated [ ] stress" "as a result of the events of this lawsuit." (Doc. 90, ¶¶ 4-5.) Evidence that is probative of the extent of, and cause of, each of these types of damages is therefore relevant to the questions of whether Plaintiff was injured <u>by Experian's conduct</u>. *Burke v. Gen. Motors Corp.*, No. CV-04-CO-00438-W, 2006 WL 8433293, at *2 (N.D. Ala. Jan. 31, 2006) ("Federal Rules of Evidence 401 and 402 provide for the liberal admission of relevant evidence . . . ."), *aff'd*, 218 F. App'x 951 (11th Cir. 2007); *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1309-10 (11th Cir. 1999) ("Rule 401 defines 'relevant evidence' as that which has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" (quoting Fed. R. Evid. 401)).

7

Specifically, with respect to the nine challenged items in Plaintiff's Motion:

## 1.   <u>Existence of the Underlying PRA Debt</u>

Plaintiff's citation to the *Rooker-Feldman* doctrine is a red herring. Experian is not asking the Court or the jury to invalidate the state court decision dismissing with prejudice the lawsuit that PRA brought against Plaintiff. But the fact that Plaintiff did in fact owe money to HSBC, a credit card debt subsequently purchased by PRA,[3] is absolutely relevant to the extent of his "mental anguish and emotional distress," as well as the degree to which his stress was actually "elevated" from subsequently receiving the Experian letter asking him to call a toll-free number provided by Experian to verify his identity. It is arguably less stressful to have a debt *that you actually incurred* be at issue than it is to have a debt that you never owed, and Experian should be allowed to explore the extent of Plaintiff's emotional distress damages in light of this factor.

This evidence is also relevant to the causation element—that is, whether Experian's lack of reinvestigation actually caused this alleged injury or whether other factors caused it. Plaintiff's life circumstances are relevant as to whether, for

---

[3] Pl.'s Dep. Tr. at 38:5-8 ("Q. Okay, you're not saying you didn't owe them [PRA], you're just saying if you did it wasn't that much? A. That's right."); *see also id.*, 31:21-32:2.

example, Plaintiff's alleged pain and suffering was in fact caused by Experian's actions or whether, perhaps, those alleged damages were more likely caused by his pre-existing injury that resulted in his prior worker's compensation claim. *See McIntyre v. Delhaize America, Inc.*, No. 8:07-CV-2370-T-30MSS, 2008 WL 11336308, at *2 (M.D. Fla. June 26, 2008) ("The Plaintiff's claim of 'compensatory damages for emotional pain and suffering' [ ] places his mental health at issue in this case; therefore, the Defendant is entitled to reasonable discovery concerning the state of Plaintiff's mental health and the nature of other stressors relating to Plaintiff's health during the relevant time period."). Similarly, as noted above, the existence of the underlying PRA debt and subsequent lawsuit is a life circumstance relevant to whether Experian's actions caused his alleged injury.

## 2.   **Attorneys' Motives**

Experian does not intend to argue that Plaintiff's counsel is venal, in this only for the money, or anything similar. Experian opposes this portion of the Motion in Limine because, as phrased, the restriction could interfere with Experian presenting evidence of basic facts concerning Plaintiff's interactions with Experian and then arguing from those facts that Plaintiff's counsel's participation throughout lessened Plaintiff's emotional distress (as he was being provided advice he trusted from a lawyer he had used before) and that the decision not to telephone the toll-

free number provided was made in connection with counsel, allowing the inference and argument that the decision was a litigation tactic.

In addition, some basic facts about Plaintiff and Plaintiff's counsel's relationship, including the fact that the statute has a fee-shifting provision, are also relevant to the causation and damages inquiry.  Here, Plaintiff worked with an attorney who he knew and trusted from previous legal counseling,[4] and together they wrote the dispute letter to Experian.[5]  The fact that Plaintiff's letter writing endeavor required minimal effort on his part is relevant to the degree of mental anguish and emotional distress Plaintiff suffered.  Similarly, the fact that Plaintiff and his lawyer chose not to take the minimal time it would have required to call, per the Experian letter's instructions to verify his identity, is also relevant to

---

[4] *See* Pl.'s Dep. Tr. at 25:4-5 ("I met Mr. Seals to handle a worker's compensation [matter]."), 39:3-6 ("Mr. Seals, upon taking my worker's comp, he informed me that I was being sued, and he told me he could help me, and I let him help me."), 40:1-9 (after the PRA collection lawsuit was dismissed, Plaintiff stayed in touch with Mr. Seals in the months following, as the worker's compensation matter remained ongoing), 42:17-43:1 (Plaintiff and Mr. Seals used Mr. Seals computer to pull his credit disclosures together).

[5] Pl.'s Dep. Tr. at 67:7-14 ("Q. What did you do after you got these credit reports on March 30th, 2015? A. We put together another letter and said that Portfolio had said they were dismissing the case and were going to take it off my credit, and – and that letter asked why it hadn't been taken off, why it was still being reported."), 69:1-3 ("Q. Did your attorney assist you in drafting these letters? A. Yes, he did.").

Plaintiff's damages and the cause of those damages.  Finally, the fee-shifting mechanism of the FCRA is relevant to why Plaintiff took the actions he did leading up to the lawsuit – actions which are relevant to the extent of Plaintiff's mental anguish and emotional distress and impeaching Plaintiff on these topics.

### 3.   <u>Actions and Conduct of Equifax or Portfolio Recovery Associates</u>

The actions and conduct of Equifax and PRA are also relevant to the extent of Plaintiff's damages and whether *Experian's* actions factually and proximately caused them.  Here, Plaintiff is seeking recovery for an indivisible injury.  (*See* Order (Doc. 84) at 4-5 ("Looking at Plaintiff's deposition testimony in this light, his testimony underscores the indivisible nature of his alleged injuries. . . . Because of Plaintiff's testimony that the separate conduct of PRA, Equifax, and Experian caused the mental and emotional pain, anguish, humiliation, and embarrassment he experienced, the court concludes he is seeking recovery for a single injury.").) PRA and Equifax, like other creditors who called and attempted to collect, added to any stress.  In addition, the fact that PRA and Equifax continued to report the debt after investigating Plaintiff's dispute is relevant to whether the damage Plaintiff allegedly suffered was actually due to the receipt of the letter from *Experian*.  Other significant events in Plaintiff's life at the time that could affect things like his emotional wellbeing and stress levels are relevant to these issues.

Additionally, this portion of the Motion appears to be an attempt to avoid the testimony of a witness that Plaintiff himself designated.   Plaintiff designated Equifax's Rule 30(b)(6) witness, Pamela Smith, in Plaintiff's Amended Witness List (Doc. 91 at 2).   Pursuant to this Court's pre-trial Order, "[t]he listing of a witness does not commit the party to have such witness available at trial or to call such witness to testify, *but does preclude the party from objecting to the presentation of such witness's testimony by another party*."  (Doc. 76 – Ex. A ¶ 2. (emphasis added))  Because Plaintiff included Equifax's Rule 30(b)(6) witness on his witness list, Plaintiff cannot now simultaneously seek to exclude Experian from providing evidence from the very same witness.  For this additional reason, this request to exclude this evidence should be rejected.

**4.     Argument or Evidence that Experian's Conduct did not Negligently Violate the FCRA**

As noted in the introductory section, *supra,* p. 2, Experian does not contest that the Court has held that Experian breached a duty to reinvestigate.[6]  Plaintiff's Motion goes beyond the scope of what this Court has previously ordered and invades areas that are remaining for the jury to decide.

---

[6] To be clear, in the event of an adverse verdict, Experian believes this certainly to be reversible error.  Experian will, however, comply with the Orders of the Court concerning this finding.

First, when this Court granted in part Plaintiff's motion for summary judgment, it decided two of the four elements of a negligent noncompliance claim. (*See* Order (Doc. 58) at 21 ("Plaintiff has shown there is no genuine dispute that (1) Plaintiff submitted a dispute to Experian pursuant to 15 U.S.C. § 1681i(a)(1)(A); and (2) Experian violated its duty to reinvestigate on the basis of Plaintiff's dispute.").) Yet injury and causation (cause in fact and proximate cause) remain jury issues.

Second, Plaintiff's willfulness claim puts Experian's intent in having a suspicious mail policy, including the contours of that policy, reflected in J. Scott Dep. Tr. Exs. 5, 8, 9, in issue. *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 70 (2007) (where there is a "dearth of guidance and the less-than-pellucid statutory text," if a defendant's reading was "not objectively unreasonable," it "falls well short of raising the 'unjustifiably high risk' of violating the statute necessary for reckless liability"). As written, Plaintiff's Motion could seek to keep evidence concerning the content of Experian's suspicious mail policy from the jury as well as any evidence of Experian's efforts to comply with that policy.

## 5.     Evidence of any Prior Settlement with Equifax or PRA and Evidence of the Amount of any Settlement with those Former Parties

Plaintiff's Motion on this point is a reargument of an issue that this Court decided in its March 30, 2018 Order (Doc. 84). The Court granted Experian's

motion to require Plaintiff to disclose the settlement agreements he entered into with Equifax and PRA.  The Court held, "[w]hether Experian informs the jury about the settlements Plaintiff made with PRA and Equifax is a key strategic decision to be made before and during trial. Evaluation of this decision requires disclosure of the terms and amounts of the settlements before trial." (Order (Doc. 84) at 5.)[7]

**6.      Evidence of Why Plaintiff's Letter of March 30, 2015 was Deemed Suspicious**

Evidence of why Plaintiff's March 30, 2015 letter was deemed suspicious is relevant to Plaintiff's willful noncompliance claim under the FCRA.  To show that Experian's alleged noncompliance was willful, Plaintiff must show either that Experian's policy was intended to disobey or disregard clear legal precedent, or that Experian acted with reckless disregard—that is to say, that it acted with "an unjustifiably high risk of harm that is either known or so obvious that it should be known."  *See Safeco*, 551 U.S. at 68 (internal quotation marks omitted) (quoting *Farmer*, 511 U.S. at 836); *see also id.* at 70 ("Given this dearth of guidance and the less-than-pellucid statutory text, [defendant's] reading was not objectively

---

[7] Although Experian opposes this request of Plaintiff, that does not mean that Experian intends to offer the settlement agreements at trial.

unreasonable, and so falls well short of raising the 'unjustifiably high risk' of violating the statute necessary for reckless liability."). Experian concedes that it cannot present evidence from a person with knowledge that Experian's relevant procedures were followed to the letter in this case and explain why Plaintiff's letter, as opposed to any other letter having the same characteristics, was deemed suspicious. But the fact that the procedures are in place and that Experian employees are expected to follow them is relevant to the question of whether Experian acted willfully. As such, the jury needs to know that they exist in order to adequately evaluate whether Experian acted willfully here.

### 7.   <u>Plaintiff's Obligations After Sending Dispute</u>

Plaintiff contends that evidence or argument that Experian asked or expected him to do something after receiving the suspicious letter response is somehow irrelevant and "potentially confusing" to the jury. (Pl.'s Mot. at 7-8.) The fact that Experian simply asked Plaintiff to call a toll-free number to verify his identity is relevant to the extent of the damages he suffered due to *Experian's* actions. Experian did not ask Plaintiff to perform an onerous task to verify his identity—if he had made that phone call, the disputed information may well have been corrected sooner and Plaintiff may not have felt the stress he contends led to the need to file this lawsuit. This evidence is probative of his injury and whether it

was actually caused by Experian's alleged negligent noncompliance.  It may also serve as impeachment evidence regarding Plaintiff's testimony about the cause and extent of his alleged damages.

In addition, with respect to "willfulness," this evidence of Experian's request and stated expectations in the suspicious mail process is also relevant to the issue of Experian's intent.  In recent years, the problem of identity theft has become more serious and pervasive, raising issues for all companies, but especially credit reporting agencies like Experian.  As shown in the record, Experian implemented a suspicious mail policy in an effort to reduce identity theft, Doc. 40 at 3-4 ¶ 9, so the fact that Experian asked Plaintiff to verify his identity in this way is absolutely relevant to whether Experian intended to willfully violate the FCRA.

## 8.   Other Information on Plaintiff's Credit File

About ten minutes after receiving the first description of Plaintiff's planned in limine topics (which included a draft of the Motion), Experian notified Plaintiff's counsel that Experian did not oppose Item No. 8, other information on Plaintiff's credit file, "so long as [Plaintiff's counsel was] not intending to foreclose [Experian] from pointing out the stress, etc., associated with those bad credit events."  2:30 p.m. May 7, 2018 Email from G. Hanthorn to J. Hubbard. Because Plaintiff's Motion included Item No. 8 without that caveat, Experian

assumes that Plaintiff does seek to foreclose Experian from arguing that Plaintiff's other bad credit events are associated with added stress. Experian therefore opposes Item No. 8, because the other negative reporting on Plaintiff's file is relevant to whether Experian's actions truly caused his allegedly "elevated" stress, mental anguish, and emotional distress.

Plaintiff cites no authority for his argument that information about other credit accounts "would only be improper character evidence" (Pl.'s Mot. at 8), particularly in light of its relevance to these damages that he seeks. But Federal Rule of Evidence 404(a)'s general prohibition on character evidence is not so broad as to exclude any evidence that could conceivably also be considered character evidence. Rather, "[u]nder Rule 404, evidence of a defendant's prior crimes or bad acts may be admitted for purposes other than proving a defendant's bad character or general propensity to commit a crime." *United States v. Green*, 873 F.3d 846, 857 (11th Cir. 2017) (citing Fed. R. Evid. 404(a)(1)); *see also* Fed. R. Evid. 404(a)(1) ("Evidence of a person's character or character trait is not admissible *to prove that on a particular occasion the person acted in accordance with the character or trait*." (emphasis added)); *Medina v. United Christian Evangelistic Ass'n*, No. 08-22111-CIV, 2009 WL 3618507, at *3 (S.D. Fla. Oct. 29, 2009) (denying plaintiff's motion in limine where "[t]he materials are admissible

as impeachment evidence, not to prove character, and, based on the briefs, that is how [the defendant] intends to utilize them").  To be clear, Experian is not seeking to use this evidence for the purpose of proving Plaintiff's  bad character.  Rather, Experian intends to use this evidence for the purpose of showing the degree to which Experian's letter truly caused Mr. Younger "elevated stress," mental anguish, and emotional distress, in light of the other stress factors he was facing at the time.[8]

---

[8] *See, e.g.*, Pl.'s Dep. Tr. at 106:2-9 ("Q. [ ] It sounds like you have a lot of mental and emotional and physical pain associated with your injury, is that fair to say? A. Yes. Q. That's something that worries you, that causes you some anxiety, is that correct?  A. Yes."), 52:7-8 (noting that, for a different negative account, he "was unemployed at the time," and therefore he "didn't make the payment"); 53:19-54:1 ("Q: Including this PRA account, I counted eight different credit accounts with negative reporting on your March 30th, 2015 TransUnion report, is that correct, Mr. Younger? A: Yes."), 66:13-67:1 ("Q. . . . Mr. Younger, with this Equifax report I counted a total of ten different credit accounts that were identified as being—or having negative reporting on them.  Is that your count as well? A. Yes. Q. Okay. Aside from the PRA account that we are here for today, did you dispute the reporting of any other negative account with Equifax that showed up on this March 30th, 2015, report? A. No."), 56:13-17 ("And at this particular -- at this time I was under a lot of different medications, so really, emotionally, I was up and down, you know, all kind of ways. I was on several different types of pain medication.").

**9.** **Evidence or Argument that Plaintiff did not Directly Send the Dispute to Defendant Experian**

Finally, Plaintiff wants to bar evidence and argument of the fact that he prepared and sent his dispute correspondence with the presence and assistance of his attorney.   This evidence too is relevant to whether Plaintiff suffered any emotional distress and whether that emotional distress was caused by Experian's alleged negligent violation of the FCRA.   The fact that Plaintiff allegedly drafted the letter to Experian together with his attorney, who he already knew and trusted from previous legal proceedings,[9] is relevant to Plaintiff's injury and the cause of that injury.   Plaintiff was not forced to engage in factual research, writing, and effort alone; the attorney who was already working with him as a result of the PRA lawsuit and his earlier successful worker's compensation action provided support throughout.

---

[9] *See* Pl.'s Dep. Tr. at 25:4-5 ("I met Mr. Seals to handle a worker's compensation [matter]."), 39:3-6 ("Mr. Seals, upon taking my worker's comp, he informed me that I was being sued, and he told me he could help me, and I let him help me."), 40:1-9 (after the PRA collection lawsuit was dismissed, Plaintiff stayed in touch with Mr. Seals in the months following, as the worker's compensation matter remained ongoing); 42:17-43:1 (Plaintiff and Mr. Seals used Mr. Seals' computer to pull his credit reports together).

## **CONCLUSION**

For the reasons set forth above, this Court should deny Plaintiff's Motion in Limine, and its nine subparts, in its entirety.

Dated:  May 11, 2018                 Respectfully submitted,

                                     */s/ L. Jackson Young, Jr.*
                                     L. Jackson Young, Jr.
                                     Ferguson Frost Moore & Young, LLP
                                     1400 Urban Center Drive, Suite 200
                                     Birmingham, AL  35242
                                     Telephone:  (205) 879-8722
                                     Facsimile:  (205) 879-8831
                                     ljy@ffmylaw.com

                                     Gregory R. Hanthorn
                                     ASB 4664 N76G
                                     Rebecca Crawford Reynolds
                                     *Pro Hac Vice*
                                     JONES DAY
                                     1420 Peachtree Street, N.E., Ste. 800
                                     Atlanta, GA  30309-3053
                                     Telephone: (404) 581-3939
                                     Facsimile:  (404) 581-8330
                                     ghanthorn@jonesday.com
                                     rreynolds@jonesday.com

                                     *Counsel for Defendant*
                                     *Experian Information Solutions, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 11, 2018, I served the foregoing document on the counsel of record listed below via filing on CM/ECF:

W. Whitney Seals
Cochrun & Seals LLC
P.O. Box 10448
Birmingham, AL  35202-0448
Telephone:  (205) 323-3900
Facsimile:  (205) 323-3906
filings@plc-law.com

John C. Hubbard
John C. Hubbard LLC
2015 First Avenue North
Birmingham, AL  35203
Telephone:  (205) 378-8121
Facsimile:  (205) 690-4525
jch@jchubbardlaw.com

*Attorneys for Plaintiff*
*Shaun Younger*

/s/ L. Jackson Young, Jr.
L. Jackson Young, Jr.

*Counsel for Defendant*
*Experian Information Solutions, Inc.*