FILED

2019 Mar-21  AM 11:29
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| SHAUN J. YOUNGER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 2:15-cv-00952-SGC |
| | ) | |
| EXPERIAN INFORMATION | ) | |
| SOLUTIONS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

On May 23, 2018, the court entered a final judgment in this case on the jury's verdict in favor of the plaintiff, Shaun J. Younger, and against the defendant, Experian Information Solutions, Inc.  (Doc. 122).  Presently pending are: (1) Experian's "Combined Renewed Motion for Judgment as a Matter of Law, Motion to Alter or Amend the Judgment, and Motion for New Trial" (Doc. 133); (2) Experian's Motion for Credit on Judgment (Doc. 132); and (3) Plaintiff's motion to alter or amend the final judgment (Doc. 128).  The motions are fully briefed and ripe for adjudication.  (Docs. 135, 138, 139, 142).  As explained below: (1) Experian's combined motion will be granted to the extent it seeks remittitur but denied in all other respects; (2) Experian's motion for credit on judgment will be granted as to compensatory damages but denied as to punitive damages; and (3) Plaintiff's motion to amend will be denied as moot.

1

# I.    BACKGROUND AND PROCEDURAL HISTORY

This matter arises under the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*.  The parties unanimously consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).  (Doc. 16).  The complaint named Experian, Equifax Information Services, LLC, and Portfolio Recovery Associates, LLC ("PRA"). (Doc. 1).  PRA entered into a *pro tanto* settlement with Plaintiff prior to the dispositive motion deadline, and all claims against it were dismissed.  (Docs. 34, 35).

The remaining parties subsequently filed cross-motions for summary judgment.  (Docs. 36, 38, 39).  On September 22, 2017, the court: (1) partially granted Plaintiff's motion for summary judgment on the issues of Experian's duty and breach under 15 U.S.C. § 1681i but denied the motion regarding Plaintiff's damages and Experian's intent; and (2) denied Experian's and Equifax's motions for summary judgment.  (Doc. 58).  Experian moved for reconsideration (Doc. 65), which the court denied on November 30, 2017 (Doc. 73).  Prior to trial, Equifax entered into a *pro tanto* settlement with Plaintiff, and the claims against Equifax were dismissed.  (Docs. 82, 83).  This left Experian as the sole defendant for trial.

Plaintiff's claims against Experian arise from its failure to delete inaccurate information from his credit report.  The inaccurate information concerned credit card debt which was sold to PRA.  PRA subsequently sued Plaintiff on the debt in

Jefferson County District Court.  The small claims court dismissed the case on January 12, 2015.  On March 30, 2015, Plaintiff pulled his Experian credit report; it listed both the original credit card debt and the debt to PRA.  That same day, with the assistance of his lawyer, Plaintiff wrote a letter to Experian identifying the misreported debt and attaching the state court order dismissing the lawsuit concerning the contested debt.

Experian employs a suspicious mail policy ("SMP") in an effort to ensure correspondence it receives concerning a consumer was sent by the consumer rather than a third-party.  Experian determined Plaintiff's letter was suspicious and, on April 15, 2015, sent Plaintiff a form "suspicious mail notification letter" ("Suspicious Mail Letter").  The Suspicious Mail Letter stated Experian would not investigate his dispute because it had determined someone other than Plaintiff had sent the letter.  Included in the Suspicious Mail Letter was a 1-800 number (the "Dispute Hotline") Plaintiff could call to report inaccurate credit information.  Experian had no further contact with Plaintiff until he filed this lawsuit.  On June 10, 2015, in the normal course of business, Experian removed the contested debt from Plaintiff's credit report.  (*See* Doc. 58 at 2-3, 6).

This matter proceeded to trial on Plaintiff's claims for negligent and willful FCRA violations against Experian.  At the close of Plaintiff's case in chief, Experian moved for judgment as a matter of law pursuant to Rule 50(a) of the

*Federal Rules of Civil Procedure*; the motion was denied.   (Doc. 130 at 36-39; *see* Doc. 115).   After the close of evidence, Experian renewed its motion, which the court denied.   (Doc. 130 at 75).   The jury subsequently returned a verdict for Plaintiff.   The verdict reflects the jury determined Experian's failure to reinvestigate Plaintiff's dispute had caused Plaintiff harm, awarding $5,000 in actual damages. The jury further found Experian's violation of the FCRA was willful, assessing $3,000,000 in punitive damages.   (Doc. 121).   The instant post-trial motions followed.

## II.   STANDARD OF REVIEW

Experian's combined motion seeks: (1) judgment as a matter of law under Rule 50(b); (2) to alter or amend the judgment under Rule 59(e); and/or (3) a new trial under Rule 59(a)(1)(A).   (Doc. 133).   These grounds for relief may be asserted in a single, combined motion.   FED. R. CIV. P. 50(b).   The applicable standards are recited in turn.

A court presented with a renewed motion for judgment as a matter of law may: (1) allow judgment on the verdict; (2) order a new trial; or (3) direct entry of judgment as a matter of law.   FED. R. CIV. P. 50(b).   A renewed motion for judgment as a matter of law may raise grounds asserted in, or closely related to, the issues raised in the original motion.   *McGinnis v. Am. Home Mortg. Servicing, Inc.*, 817 F.3d 1241, 1261 (11th Cir. 2016).   Judgment as a matter of law should be

4

granted only when "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." *Commodores Entm't Corp. v. McClary*, 879 F.3d 1114, 1130 (11th Cir. 2018).   This review takes account of all of the evidence presented at trial and draws "all reasonable inference most favorable to the party opposed to the motion." *Simon v. Shearson Lehman Bros., Inc.*, 895 F.2d 1304, 1310 (11th Cir. 1990).

A district court may grant a new trial "for any reason for which a new trial has heretofore been granted in actions at law in federal court." FED. R. CIV. P. 59(a)(1)(A).   "A judge should grant a motion for a new trial when the verdict is against the clear weight of the evidence or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." *Lipphardt v. Durango Steakhouse of Brandon, Inc.,* 267 F.3d 1183, 1186 (11th Cir. 2001) (internal quotation marks omitted).   Courts "should give great deference to the jury's verdict and grant a new trial sparingly." *Hooks v. GEICO Gen. Ins. Co., Inc.,* No. 13-891, 2016 WL 5415134, at *1 (M.D. Fla. Sept. 28, 2016).

"The decision whether to alter or amend a judgment pursuant to Rule 59(e) is committed to the sound discretion of the district judge." *Mincey v. Head,* 206 F.3d 1106, 1137 (11th Cir. 2000) (internal quotation marks omitted).   "The only grounds for granting a Rule 59 motion are newly-discovered evidence or manifest errors of law or fact." *Arthur v. King,* 500 F.3d 1335, 1343 (11th Cir. 2007) (alterations

incorporated).   "A Rule 59(e) motion cannot be used to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment."   *Id.*   (alterations incorporated).

## III.   DISCUSSION

This opinion addresses Experian's combined post-trial motion before turning to Experian's motion for credit on judgment and Plaintiff's motion to alter or amend.

### A.   Experian's Combined Post-Trial Motion

Experian's combined motion seeks post-trial relief on the following grounds: (1) Plaintiff's reference to an Assurance of Voluntary Compliance; (2) Plaintiff's damages; (3) juror confusion caused by the court's summary judgment ruling; (4) the lack of evidence showing Experian acted willfully; and (5) excessive punitive damages.   These issues are addressed in turn.

#### 1.   Reference to Assurance of Voluntary Compliance

Experian contends it is due post-judgment relief because Plaintiff's counsel referred to an "Assurance of Voluntary Compliance" ("AVC") entered into by attorneys general of thirty-one states and the three national credit reporting agencies ("CRAs"), including Experian.   (Doc. 133 at 5-13).   The AVC was not entered into evidence, but when cross-examining Experian's corporate representative, Plaintiff's counsel engaged in the following line of questioning.

*Q.*   And then pursuant to this policy, if they call in, you process the

dispute?

**A**.   If the consumer calls in, confirms their identity, and states that they are in fact the person who initiated the dispute, yes, sir, we will.

*Q*.   Well, I'm glad you mentioned the phone call again.   There's a couple of purposes in the phone call that you told us about: to process the dispute, confirm ID; am I right?   But isn't another purpose of the phone call to market to and sell items to the consumer?

**A**. No, sir.

*Q*. Has that ever been part of your practice that in a post-dispute consumer phone call, Experian will try to sell them items?

**A**. No, sir. Our dispute agents do not try to sell items.

*Q*. Not in a post-consumer dispute like this?

**A**. This is not post-consumer dispute, first of all.

*Q*. Post-dispute consumer phone call.   Forgive my verbiage.

**A**. No, sir.

*Q*. Okay. Let me ask you this. Let's see here.   Are you aware that on -- what's the date on this?   May 14, 2015. So a month after -- less than a month after y'all sent the letter to Mr. Younger, Experian entered into an assurance of compliance with 31 states including the State of Alabama in which you agreed or it was found that you engaged in improper disclosure or marketing practices relating to the sale of direct-to-consumer products to consumers during credit report dispute phone calls? Are you aware of that?

(Doc. 130 at 64-65).   At that point, counsel for Experian asked to see a copy of the

AVC and discussed its terms with opposing counsel in front of the jury.   (*Id.* at 66).

No objections were lodged.   Plaintiff's counsel continued cross-examination:

*Q.*   All right. As a result of the findings of this multistate committee, according to this document that your lawyer and Experian signed -- or your lawyer's law firm, rather -- it says that y'all shall adopt a script for use in post-dispute marketing phone calls to communicate to consumers in a clear and comprehensible language when the dispute portion ends and when the marketing products and services begins.   So I want to be very clear about this and give you another chance. Are you telling this jury in light of this that Experian's practice was not to try to market and sell items to consumers during dispute phone calls?

**A.** During this phone number -- this dedicated phone line?   No, sir, I don't believe so.

*Q.* Not at all?

**A.**   I can tell you that I have worked consumer disputes myself for about 14 of the 16 years and, no, I never marketed any products or anything like that on a consumer dispute phone line.

*Q.* Well, then, based on your own personal knowledge, is it surprising to you that Experian agreed that they would enter into this compliance order and change their business practices to make it clear that they were marketing?

MS. REYNOLDS: Objection, Your Honor.   Relevance.

THE COURT: Overruled.

*Q.* (BY MR. SEALS:) Go ahead.

**A.**   Can you ask the question again?

*Q.*   I'll do my best.   Because it was a little wordy.

**A.** Uh-huh.

*Q.* Does it surprise you based on your personal experience at Experian and your personal knowledge of how Experian works that you've told us about that Experian would enter into this assurance of voluntary

compliance agreeing that they would not -- or they would delineate and stop marketing to people at the same time, at least delineate it out and come up with a script?

**A.**  No.

*Q.*  That doesn't surprise you?

**A.**  No, sir.

*Q.*  And yet your testimony to this jury is that Experian doesn't try to sell things when people call in to that number?

**A.**  That's correct.

(Doc. 130 at 66-68).   There were no sidebars during this portion of the proceedings. During this entire line of questioning, Experian's only objection was based on relevance.   The testimony was clearly relevant to Experian's motive for encouraging Plaintiff to call the Dispute Hotline.

During closing arguments, Plaintiff's counsel again returned to the AVC:

In an effort to safeguard your personal credit information from fraud, we're not initiating disputes, and we're going to apply this to future requests, but tell you what: If you do believe it's incorrect, just give us a call. Not go online, not send another letter, but call us.  Why is it important that he call you?

Well, you heard me talk to Ms. Methvin about that.  Experian, amongst others, had gotten into trouble because they were trying to sell credit reporting stuff, other products to people that would call in with these disputes.

MR. HANTHORN: Your Honor, object. And may we approach?

THE COURT: You may.
(Sidebar off the record.)

(In open court:)

THE COURT: The objection is overruled. You may proceed.

(Doc. 130 at 93).   Although not on the record, during the sidebar Experian argued this line of questioning violated an *in limine* order.   Plaintiff's counsel responded by noting Experian's failure to object when questions regarding the AVC were asked on cross-examination.   After the court overruled Experian's objection, Plaintiff continued to discuss his theory that Experian's SMP and wrongful determination that Plaintiff did not send the dispute letter were motivated by its desire to sell products over the Dispute Hotline.   (*Id.* at 93-94).

In the instant motion, Experian contends Plaintiff's reference to the AVC requires post-trial relief for two reasons.   First, Experian argues references to the AVC were precluded under the court's *in limine* order.   (Doc. 133 at 5-10).   Next, Experian contends Plaintiff's discussion of the AVC during closing unfairly prejudiced Experian.   (*Id.* at 10-13).   Each argument is addressed in turn.

a.    Order *in limine* and Cross-Examination

Prior to trial, Experian filed an unopposed motion *in limine* precluding any reference to:

> (1) any other lawsuits, verdicts, investigations, complaints, or similar actions (including any complaint, investigation, or administrative action by . . . State Attorney's General, or other governmental entity) filed or instituted against Experian; (2) the number of such actions; and

(3) any consent decrees or settlements entered into by Experian and any governmental entity or consumer . . . .

(Doc. 102 at 1-2).   Experian's motion was based on numerous grounds, including relevance, unfair prejudice, potential juror confusion, hearsay, the inadmissibility of settlement agreements, and judicial economy.   (*Id.*).   The court granted the motion, noting evidence of other actions or settlements against Experian "is irrelevant to the instant action and prejudicial for the purposes of Rule 403.   Even if such evidence has some probative value, it would likely confuse and mislead the jury from evaluating Plaintiff's claims in this case."   (Doc. 111 at 5).   Meanwhile, the court also granted Plaintiff's motion *in limine*, precluding Experian from arguing Plaintiff had a duty or obligation to call the Dispute Hotline after receiving the Suspicious Mail Letter from Experian.   (Doc. 111 at 4).

"Motions in limine are frequently made in the abstract and in anticipation of some hypothetical circumstance that may not develop at trial."   *Putnam v. Henkel Consumer Adhesives, Inc.,* No. 05-2011, 2008 WL 11403201, at *3 (N.D. Ga. Jan. 4, 2008) (quoting *Collins v. Wayne Corp.*, 621 F.2d 777, 784 (5th Cir. 1980)).   Orders *in limine* are interlocutory orders that can be revisited when the circumstances crystalize at trial.   *See id*.   Indeed, even where a court's *in limine* order precludes certain evidence, a party typically must object to preserve the error.   *Frederick v. Kirby Tankships, Inc.*, 205 F.3d 1277, 1285 (11th Cir. 2000) ("Generally, a party

must object to preserve error in the admission of testimony, even when a party or a court violates an in limine ruling."); *Boyd v. Ala. Dep't Of Corr.*, 296 F. App'x 907, 908-09 (11th Cir. 2008); *ML Healthcare Servs., LLC v. Publix Super Markets, Inc.*, 881 F.3d 1293, 1305-06 (11th Cir. 2018) ("if the opposing party violates the terms of the initial [*in limine*] ruling, objection must be made when the evidence is offered to preserve the claim of error for appeal") (quoting advisory committee's note to FED. R. EVID. 103).

Here, Experian's failure to object when Plaintiff began eliciting testimony regarding the AVC has resulted in waiver of its right to post-judgment relief on this ground. *Frederick*, 205 F.3d at 1285.[1]  Despite discussion between opposing counsel regarding the provenance and terms of the AVC and Plaintiff's multiple questions to the witness regarding the AVC, Experian did not object until approximately three minutes after Plaintiff first identified the document.  Even then, the only objection was to relevance.  Experian did not cite the order *in limine* as grounds for objection until after the close of evidence, at a sidebar during Plaintiff's closing argument.  Even if Experian's relevance objection could be

---

[1] *Cf. Goodloe v. Daphne Utilities*, No. 13-0605, 2015 WL 4523974, at *4 (S.D. Ala. July 27, 2015), *aff'd sub nom. Nettles v. Daphne Utilities*, 689 F. App'x 925 (11th Cir. 2017). ("Plaintiff's failure to object does not *excuse* defendant's violations; however, it does eliminate plaintiff's remedy. The unfavorable situation in which plaintiff finds himself is one of his own creation. Had he timely objected before or during trial based on information he had before him at that time, effective curative measures could have been implemented then. Corrective action could have been taken, and the improperly obtained evidence could have been excluded, with no adverse effects on plaintiff or plaintiff's case. By remaining silent before and during trial, Goodloe failed to preserve the issue and waived any right to a post-judgment remedy.")

construed as harkening back to the order *in limine*, which cited relevance as a ground for precluding testimony of settlements, events at trial had rendered the testimony relevant.

Experian contends its failure to make a timely objection does not foreclose post-judgment relief.   But the cases on which Experian relies are factually distinguishable from the circumstances presented here.   (Doc. 142 at 9).   In *McWhorter v. City of Birmingham*, 906 F.2d 674, 676-77 (11th Cir. 1990), the defendant did not waive its objection where, despite an order *in limine* precluding a specific theory of the case: (1) plaintiff's counsel spoke to this theory during closing; (2) plaintiff's counsel encouraged the jury to consider an exhibit corroborating the theory; (3) the exhibit was not included on the plaintiff's exhibit list; and (4) after the trial judge sent his clerk to retrieve the exhibit from the jury room, the jury notified the court the exhibit was missing.[2]   In *Edwards v. Sears, Roebuck and Co.*, 512 F.2d 276, 284-85 (5th Cir. 1975), the defendant did not waive its objections to plaintiff's closing statements which contradicted the relevant witness's testimony, effectively manufacturing evidence.   Plaintiff's counsel's conduct here does not even approach the level of conduct described in *McWhorter*.   And unlike *Edwards*, in which counsel's closing remarks flatly misrepresented the relevant testimony, here Experian's corporate representative offered contradictory testimony regarding the

---

[2]  This conduct earned plaintiff's counsel a night in custody.   *Id.* at 677.

AVC.   On the one hand, the witness testified Experian did not market products to consumers via the Dispute Hotline; on the other, she testified she was unsurprised Experian entered into the AVC, which concerned this very conduct.

Next, Experian contends Plaintiff's references to the AVC were inadmissible settlement statements under Rule 408 of the *Federal Rules of Evidence*.   (Doc. 133 at 9).   Even setting aside Experian's failure to timely object on this ground, the Eleventh Circuit has held Rule 408 is "applicable to situations involving settlements between one of the parties and a third party, where such settlements have arisen out of the same transaction that is in dispute."   *Dallis v. Aetna Life Ins. Co.*, 768 F.2d 1303, 1306 (11th Cir. 1985).   While *Dallis* resolved the issue on other grounds, the Eleventh Circuit expressed skepticism that Rule 408 could be extended to "settlement between one party and a third party when such settlement involves similar circumstances to, but does not arise out of the transaction with which the litigation is concerned."   *Id.* at 1306-07.   District courts within the Eleventh Circuit have cited *Dallis* in refusing to extend Rule 408 beyond these "historical confines" of settlement negotiations "to prove liability for or invalidity [or amount] *of the claim under negotiation*."   *Armstrong v. HRB Royalty, Inc.,* 392 F. Supp. 2d 1302, 1304, 1308 (S.D. Ala. 2005); *Ostrow v. GlobeCast America, Inc.,* 825 F. Supp. 2d 1267, 1272-74 (S.D. Fla. 2011).   This court also declines to extend Rule 408 to the

circumstances here.   Accordingly, Experian is not entitled to post-judgment relief under Rule 408.

Finally, Experian contends Plaintiff misrepresented the contents of the AVC on cross-examination.  (Doc. 133 at 9-10).  This argument is focused on a single instance in which Plaintiff described the AVC as stating Experian "agreed or [] was found" to have "engaged in improper disclosure or marketing practices relating to the sale of direct-to-consumer products to consumers during credit report dispute phone calls."  (Doc. 130 at 65).  In particular, Experian takes issue with Plaintiff's statement the AVC reflected: (1) Experian engaged in this conduct; and/or (2) Experian agreed with any such finding.  (Doc. 133 at 9-10).  Importantly, immediately after Plaintiff asked this question, Experian's counsel asked to see a copy of the AVC, read the portion of the document Plaintiff referred to, and briefly discussed its terms with opposing counsel in front of the jury.  (Doc. 130 at 66). During this pause in the cross-examination and the inter-counsel discussion regarding the AVC's terms, Experian did not object on any grounds or ask to be heard outside the jury's presence.   Experian never objected to Plaintiff's characterization of the AVC, either on the record or during a sidebar.   Accordingly, Experian has waived its right to post-judgment relief on this ground.

Experian had a variety of curative measures at its disposal prior to the close of evidence.   Experian could have timely objected to Plaintiff's references to the AVC

on a number of grounds, including: (1) preclusion under the order *in limine*; (2) Plaintiff's description of the AVC's terms; (3) Rule 408; and/or (4) other grounds. Instead, after Plaintiff had asked several questions concerning the AVC on cross-examination, Experian lodged a single objection based on relevance. Experian did not expand on this objection on the record and did not request a sidebar.  Experian also could have taken a number of other steps to correct the supposed errors that it now contends warrant a new trial or other post-judgment relief.   Experian could have redirected to further examine its corporate representative concerning the AVC; it chose not to do so.  Experian could have redirected and entered the AVC into evidence to challenge Plaintiff's characterization of the AVC; it chose not to do so.   Experian could have moved for a curative instruction or mistrial on these grounds; it chose not to do so.  Having chosen—for whatever reason—to ride it out and hope for the best, Experian cannot now receive post-judgment relief on grounds it eschewed at trial.

        b.    <u>Closing</u>

Experian contends Plaintiff's closing was improper because it relied heavily on the AVC.  This argument rests on Experian's contention Plaintiff never presented any evidence concerning the AVC.  (Doc. 133 at 10-13).  In particular, Experian: (1) notes the AVC was never entered as evidence; and (2) contends its corporate representative never offered any testimony to corroborate Plaintiff's

description of the AVC.   (*Id.* at 10).   Experian also argues Plaintiff inappropriately invited the jury to make credibility determinations regarding its corporate representative.

Experian's corporate representative's testimony is evidence in this case—evidence which was not stricken and was only challenged by a single, belated objection as to relevance.   It is true the corporate representative answered in the negative when Plaintiff questioned whether Experian marketed products to consumers calling the Dispute Hotline.   However, the corporate representative also twice stated she was not surprised Experian entered into the AVC.   This contradictory testimony is evidence in the case, despite the fact that the AVC itself was not entered into evidence.

Experian objected to Plaintiff's narrative concerning the AVC during closing, citing the order *in limine* during a sidebar.   However, because the testimony was given without objection, save an untimely objection as to relevance, the court overruled the sidebar objection during closing.   Even then, Experian did not pursue any of the curative actions available, including moving for a curative instruction or seeking a mistrial.   Accordingly, Experian is not entitled to post-judgment relief regarding Plaintiff's references to the AVC in closing arguments.

### 2.   Emotional Damages

A plaintiff asserting claims for negligent noncompliance with the FCRA must

show actual damages.  *Levine v. World Fin. Network Nat'l Bank*, 437 F.3d 437, 1124 (11th Cir. 2006).  Experian contends the plaintiff failed to present evidence sufficient to show damages for negligent noncompliance.  (Doc. 133 at 13-14). The court addressed similar arguments at the summary judgment stage.  (Doc. 58 at 20-21) ("Plaintiff has offered evidence of physical injury (i.e., the exacerbation of his preexisting nerve damage) and emotional distress. . . .   Plaintiff's testimony as to nerve pain, headaches, and other physical injury is sufficient to raise a dispute as to actual damages.") (*citing Thomas v. Gulf Coast Credit Servs., Inc.*, 214 F. Supp. 2d 1228, 1235 (M.D. Ala. 2002)).

At trial, Plaintiff testified a previous spinal surgery left him with permanent nerve damage; when he experiences stress or gets upset, this nerve damages causes "severe pain."  (Doc. 129 at 170).  The plaintiff testified that receiving Experian's letter caused him stress, which "magnified" his pain and "made it worse."  (*Id.* at 175).  As the court noted in its ruling on summary judgment, this testimony is sufficient to satisfy the damages requirement of a claim for negligent noncompliance.  (Doc. 58 at 20-21) (citing *Levine*, 437 F.3d 1118; *Thomas*, 214 F. Supp. 2d 1228).  Plaintiff's testimony stands in contrast to the cases Experian cites in its combined motion, in which the plaintiffs offered merely generalized assertions—or no evidence at all—of emotional damages.  (*See* Doc. 133 at 13-14) (citing *Lodge v. Kondamur Capital Corp.*, 750 F.3d 1263, 1272 (11th Cir. 2014),

18

and *Akouri v. State of Fla. Dep't of Transp.*, 408 F.3d 1338, 1345 n.5 (11th Cir. 2005)).

Nothing occurred at trial which would change the court's opinion regarding the sufficiency of Plaintiff's damages, as expressed in the memorandum opinion addressing the motions for summary judgment.   Accordingly, further discussion of this issue is unwarranted here.

### 3.   Partial Grant of Plaintiff's Motion for Summary Judgment

Next, Experian argues the court wrongly granted partial summary judgment to the plaintiff on two of the four elements—duty and breach—of the negligent noncompliance claim, creating juror confusion and unfairly prejudicing Experian. (Doc. 133 at 14-17).   Experian claims the summary judgment ruling prematurely decided an issue of fact regarding whether the letter reasonably appeared to have come from Plaintiff and prevented Experian from presenting evidence to this effect. (*Id.* at 14).   Meanwhile, Experian contends the court allowed Plaintiff to present—over Experian's objection—evidence regarding whether Experian breached its duty to reinvestigate.   (*Id.* at 15).   Experian argues these rulings allowed Plaintiff to present evidence on an issue not before the jury while simultaneously limiting Experian's ability to respond.   (*Id.*).   Finally, Experian contends these errors were exacerbated by Plaintiff's counsel's: (1) references to the SMP as "illegal;" and (2) representation the court had already ruled Experian

negligently violated the FCRA.   (*Id.* at 15-16; Doc. 142 at 10-11).

The evidence Experian claims Plaintiff offered to show the already-settled questions of breach and duty concerns Paz Salinas, the Experian employee in Santiago, Chile who generated the Suspicious Mail Letter.   In particular, Experian cites Plaintiff's reading of Ms. Salinas's deposition into the record and Plaintiff's cross-examination of Experian's corporate representative.   As noted on the record, Ms. Salinas's deposition testimony was relevant to the questions of willfulness and punitive damages.   (Doc. 129 at 7-8).   To the extent Experian claims the examination of its corporate representative concerning Ms. Salinas was improper, it did not object on this basis at the time.   (Doc. 130 at 70-72).

Experian also contends the confusion caused by the partial grant of summary judgment was exacerbated by Plaintiff's description of the SMP as "illegal" during his opening statement.   (Doc. 133 at 15-16; *see* Doc. 129 at 91).   Experian objected, and after a sidebar, the court instructed the jury its actual determination was that Plaintiff's letter triggered a duty on Experian to reinvestigate, which it did not do.   (Doc. 129 at 92).   Counsel for Plaintiff subsequently sought further guidance from the court regarding how to discuss the summary judgment ruling and did not thereafter describe the SMP as illegal.   (*See* Doc. 130 at 4-6).   The single description of the SMP as illegal, remedied by a timely curative instruction, does not warrant a new trial or other post-judgment relief.   To the extent Experian contends

Plaintiff continued to misrepresent the court's summary judgment ruling, it did not preserve any such objection on the record.

For the foregoing reasons, Experian is not entitled to relief on these grounds.

### 4.   Willful Violation of FCRA

Experian contends Plaintiff presented no evidence, much less clear and convincing evidence, to support liability for willfully violating the FCRA.  (Doc. 133 at 17-22).   Specifically, Experian argues neither its misidentification of Plaintiff's letter as suspicious, nor the SMP itself, can show willfulness under the FCRA.   (*Id.*).   As to its identification of Plaintiff's letter as suspicious, Experian characterizes it as "an isolated, honest mistake" and cites *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007), for the proposition that merely negligent behavior cannot give rise to liability for willfulness.   (*Id.* at 18-19).   As to the SMP, Experian contends the SMP is not objectively unreasonable, primarily pointing to rulings from extra-circuit cases.   (*Id.* at 20-22).

The court has previously addressed—twice—similar arguments regarding willfulness in this case.   In ruling on the summary judgment motions, the court noted Eleventh Circuit precedent requiring a plaintiff alleging willful violation of the FCRA to show a CRA's conduct was based on an objectively unreasonable interpretation of the law.   (Doc. 58 at 18-21) (*citing Safeco*, 775 F.3d at 78).   The court also discussed *Collins v. Experian Info. Sol'ns, Inc.,* 775 F.3d 1330 (11th Cir.

2015), noting a plaintiff can establish willfulness by showing "the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless."   (*Id.* at 19-20).

In its motion to reconsider, Experian argued the court's treatment of willfulness constituted a "manifest injustice," largely on the basis of extra-circuit decisions in which district courts found the SMP did not violate any portion of the FCRA.   (Doc. 65 at 6, 15-17).   In denying the motion to reconsider, the court again explained a factual dispute remained concerning whether the SMP was objectively reasonable.   (Doc. 73 at 9-10).

At trial, the jury heard evidence that: (1) Experian employs ten to fourteen mailroom employees to sort between 3,000 and 10,000 letters each day (Doc. 130 at 277-78); (2) each day, Experian deems thousands of customer disputes suspicious (Doc. 129 at 147); (3) the SMP has been in effect for years (*Id.* at 147-48); and (4) Experian's corporate representative could not explain how Plaintiff's letter was suspicious (*Id.* at 118-19; Doc. 130 at 71).   This constituted clear and convincing evidence from which a jury could—and in this case, did—conclude Experian "ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless."   *Collins,* 775 F.3d at 1336.

To demonstrate that the SMP is not objectively unreasonable, the instant combined motion also relies on *In re Experian Info. Sol'ns, Inc.*, No. 15-1212, 2017

WL 3559007 (D. Ariz. Aug. 17, 2017), *Turner v. Experian Info. Sol'ns, Inc.*, No. 16-630, 2017 WL 2832738 (N.D. Ohio June 30, 2017), *aff'd*, No. 17-1795 (6th Cir. Mar. 1, 2018), and *Lindsey v. Experian Info. Sol'ns, Inc.*, No. 15-2353-AKK, 2017 WL 412889 (N.D. Ala. Jan. 31, 2017).   The court has previously differentiated *In re Experian* and *Turner* on the grounds those cases addressed letters sent by credit repair organizations, not the consumer.   (Doc. 73 at 5-9).   The court will not revisit its prior decision regarding the import of these extra-circuit cases.

The instant motion is the first time Experian has raised *Lindsey* in this matter. However, *Lindsey* is also factually distinguishable from this case.   In granting Experian's motion for summary judgment in *Lindsey*, Judge Kallon found the plaintiff lacked standing to assert claims for willful violation of the FCRA because he had not suffered an injury in fact.   2017 WL 412889 at *3-*4.   Alternatively, Judge Kallon found the plaintiff in *Lindsey* could not establish willfulness.   *Id.* at *5.   This determination was partially based on the particular facts of that case, in which Experian removed the contested debt from plaintiff's credit report before it sent the suspicious mail letter to him.   *Id.*   ("Experian's decision to not initiate a reinvestigation [] resulted in no harm here since Experian had already removed the disputed information the day before.").   Accordingly, a finding of willfulness here does not conflict with *Lindsey*.

For the foregoing reasons, Experian is not entitled to post-trial relief on the

issue of willfulness.

### 5.    Punitive Damages

Finally, Experian contends the punitive damages awarded by the jury are constitutionally excessive on two grounds: (1) the award violates due process; and (2) the award was based on Plaintiff's impermissible arguments.   (Doc. 133 at 22-34).   The court will address these arguments in reverse order.

### a.    Impermissible Arguments

Experian contends the jury's punitive damage award was influenced by improper arguments presented by Plaintiff regarding: (1) Experian's use of the Dispute Hotline to sell products; (2) harm Experian caused to non-parties; (3) the nationality of Experian's employees; and (4) Experian's size and profitability. (Doc. 133 at 29-34).   Experian's first argument regarding the dispute hotline was addressed above in Section III.A.1.   Portions of the second argument regarding harm to non-parties—that the SMP did not violate the FCRA—rely on arguments already addressed in the order denying reconsideration of the summary judgment ruling (Doc. 58 at 4-9).   Neither argument warrants additional discussion here. Regarding the remaining arguments Experian contends were improper, none drew a contemporaneous objection from Experian at trial.

Regarding harm to non-parties, Experian cites exclusively to *Phillip Morris USA v. Williams*, 549 U.S. 346, 355 (2007).   In *Williams*, an Oregon state case

concerning the smoking-related death of the plaintiff's husband, plaintiff counsel's closing argument encouraged the jury to consider the number of Oregonians that had, or would, be stricken with smoking-related illnesses.   *Id.* at 350-51.   The trial court subsequently refused the defendant's request to include a jury instruction that punitive damages could not be used to punish the defendant for harm to non-parties. *Id.* at 351.   Instead, the trial court instructed the jury that punitive damages are awarded to punish and deter misconduct, not compensate a victim.   *Id.*   After a plaintiff's verdict, including a large punitive damage award, the defendant appealed, eventually arriving before the Supreme Court.   The Supreme Court remanded to the Oregon Supreme Court largely due to the jury instructions, which created confusion regarding harm to non-parties.   *Id.* at 357-58.   In the instant case, the court gave the following jury instruction: "An award of punitive damages may not be used to punish Defendant Experian for harms it is alleged to have caused to non-parties to this case."   (Doc. 120 at 16).   Accordingly, the problem the Supreme Court identified in *Williams* is not implicated here.

Next, Experian contends it was punished for the nationality of its employees. (Doc. 133 at 32-33).   This argument focuses on Plaintiff's references to Paz Salinas as a Chilean employee of Experian.   In support, Experian cites *Pappas v. Middle Earth Condominium Ass'n,* 963 F.2d 534, 539 (2d Cir. 1992), a case in which defense counsel offered no proof and presented no witnesses, instead only relying on

regional bias.   Here, Plaintiff presented a substantial case and did not employ any of the improper tactics described in *Pappas*.   Simply mentioning Ms. Salinas's nationality, without more, does not justify post-judgement relief.   Experian also contends Plaintiff's reference to Ms. Salinas's nationality violated an order *in limine* prohibiting evidence or comment that Experian "is large and from out of town." (Doc. 133 at 32; Doc. 111 at 4).   To the extent this *in limine* order could have applied to mentioning the nationality or residence of Ms. Salinas, Experian did not object on this basis.

Finally, Experian contends the punitive damage award improperly punished it for its size and profitability.   (Doc. 133 at 33-34).   This assertion focuses on Plaintiff's closing statements in which he argued an appropriate punishment would be a week's worth of Experian's profits, which he stated as over $3,000,000.   (*See id.* at 33).   "The wealth of a defendant cannot justify an otherwise unconstitutional punitive damages award."   *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 427 (2003).   Experian's concerns in this regard should be alleviated by the remittitur of the punitive damage award, discussed below.   Here, *Campbell* does not require any action beyond remittitur.   Additionally, given the purposes of punishment and deterrence, a defendant's wealth can be relevant to setting the amount of a punitive damage award.   *See Kemp v. Am. Tel. & Tel. Co.,* 393 F.3d 1354, 1365 (11th Cir. 2004).

b.    Due Process

Grossly excessive and arbitrary punitive damage awards infringe on a defendant's due process rights.   *Campbell*, 538 U.S. at 416.   Courts have "a mandatory duty to correct an unconstitutionally excessive verdict so that it conforms to the requirements of the due process clause."   *Johansen v. Combustion Eng'g, Inc.,* 170 F.3d 1320, 1331 (11th Cir. 1999).   Punitive damages awards are analyzed using the following factors:

> (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases.

*Campbell* , 538 U.S. at 418 (citing factors set forth in *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575 (1996)).   Because several circuits hold the third guidepost is unhelpful in FCRA cases, the parties' respective arguments here are limited to the first two *Gore* factors: (1) reprehensibility; and (2) the disparity between actual or potential harm and the award.   (*See* Doc. 133 at 25; Doc. 139 at 27).

a.    Reprehensibility

Regarding reprehensibility, the Supreme Court has held courts should consider whether:

> the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability;

> the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident.   The existence of any one of these factors weighing in favor of a plaintiff may not be sufficient to sustain a punitive damages award; and the absence of all of them renders any award suspect.

*Campbell*, 538 U.S. at 419 (citations omitted).   In FCRA cases, "the absence of physical harm does not weigh strongly against punitive damages."   *Brim v. Midland Credit Mgmt., Inc.*, 795 F. Supp. 2d 1255, 1263 (N.D. Ala. 2011) (citing *Saunders v. Branch Banking and Trust Co. of VA.*, 526 F.3d 142, 152-53 (4th Cir. 2008); *Goldsmith v. Bagby Elevator Co. Inc.*, 513 F.3d 1261, 1283 (11th Cir. 2008)).   The same is true regarding the level of a defendant's disregard of health or safety. *Saunders*, 526 F.3d at 152-53.   Accordingly, the factors relevant to determining reprehensibility in an FCRA case are the frequency of the conduct, the financial vulnerability of the plaintiff, and the defendant's scienter.

Experian devised the SMP and then used it for years.   Under the SMP, Experian employs ten to fourteen mailroom employees to sort up to 10,000 dispute letters per day and daily deems thousands of customer disputes suspicious.   The criteria Experian uses to identify suspicious mail includes examining the outside of the envelopes to see whether multiple letters: (1) arrive in envelopes of the same size or the same color; (2) have the same postmark; (3) have a stamp meter barcode; (4) bear the same type of postage stamp; and (5) bear the same font or handwriting. (Doc. 130 at 41, 47-48).   Other characteristics Experian uses to deem a letter

28

suspicious include the lack of a return address and/or similar formatting.   (Doc. 129 at 123-24).

Experian knows someone in the mailroom determined Plaintiff's letter was suspicious; it does not know who made the determination or its basis.   (*E.g.* Doc. 129 at 118, 135).   Experian knows someone in the mailroom opened the envelope and scanned its contents into the electronic imaging system but could not say whether anyone ever read the letter or attachments for content.   (*Id.* at 130-31). Experian's corporate representative testified that nothing about the letter indicated it was sent by anyone other than Plaintiff.   (Doc. 130 at 71).

The only person Experian can identify who viewed the contents of Plaintiff's letter was Paz Salinas, who reviewed the electronic images for a minute and fifteen seconds but did not read the letter for content.   (Doc. 129 at 142, 154).   Ms. Salinas testified the Plaintiff's letter appeared suspicious because it used the "same form" and same font as other letters.   (*Id.* at 160).   Ms. Salinas in turn generated the Suspicious Mail Letter to Plaintiff.   (*Id.* at 143).   The Suspicious Mail Letter stated Experian: (1) had determined the Plaintiff's dispute letter did not come from him; (2) worked with law enforcement officials to identify fraudulent correspondence; (3) would not reinvestigate the disputed debt; and (4) would not respond to additional suspicious correspondence.   (Doc. 40 at 35; *see* Doc. 129 at 134-37).

The jury also heard testimony calling into question the efficacy of the SMP, both in the abstract and under the facts of this case.   Specifically, the purported purpose of the SMP is to prevent fraudsters from sending disputes in the name of third-parties, using the dispute process to glean an unwitting consumer's personal information.   However, the jury heard evidence from which it could reasonably conclude the SMP would not prevent a determined fraudster from securing third-party consumer information from Experian.   (Doc. 130 at 59-60, 64-65). Specifically, Plaintiff elicited testimony from Experian's corporate representative that a fraudster who received a suspicious mail letter could simply call the dispute hotline and proceed to receive the protected information from Experian.   (*Id.* at 59-61, 64-65).   Regarding the specific facts of Plaintiff's case, the jury heard how improbable it was that a fraudster would write Experian to contest a debt of a third-party, attaching a court order showing the debt was discharged.   (*Id.* at 70). The jury also reasonably could conclude that processing the Plaintiff's dispute could take much longer than the seventy-five seconds it took Ms. Salinas to review the Plaintiff's letter and generate the Suspicious Mail Letter.   (*Id.* at 61-64).

The foregoing evidence clearly supports the conclusion that Experian's conduct involved repeated actions.   Experian employed the SMP for years and dedicated the Dispute Hotline to handle calls from consumers whose disputes were wrongly deemed suspicious.   *See Brim*, 795 F. Supp. 2d at 1263 (finding

reprehensibility where defendant employed faulty procedures for years).   The jury heard evidence from which it could reasonably conclude Experian employed the SMP to save money by: (1) reducing the overall number of reinvestigations it otherwise would have to perform; and (2) marketing products to consumers over the Dispute Hotline.   *See id.* at 1262-66.   Accordingly, Experian's conduct was repeated.

Regarding financial vulnerability, Plaintiff's brief focuses on the fact that consumers cannot opt out of credit reporting and depend on Experian to accurately report their debts.   (Doc. 139 at 29).   While true, this does not show any particular financial vulnerability the Plaintiff faced.   However, the jury also heard evidence from which it could reasonably determine Plaintiff was financially vulnerable. Specifically, Plaintiff testified to a number of sizeable debts on student and bank loans which were either past due, in default, or in collections between 2011 and 2015.   (Doc. 129 at 179-80; Doc. 130 at 9, 18-23).   PRA had sued Plaintiff and was calling his mother's house during the relevant time period.   (Doc. 130 at 20-21). Plaintiff further testified he: (1) had suffered a work-related injury which required surgery; (2) was awaiting a worker's compensation settlement; and (3) had been sued for child support in a case of contested paternity.   (Doc. 130 at 12, 14).   These facts were sufficient to show Plaintiff's financial vulnerability, above and beyond his status as a consumer with little bargaining power over Experian.

The jury heard all of the foregoing evidence and determined Experian's conduct was sufficiently reprehensible to warrant punitive damages.   Because the evidence was sufficient to support this conclusion, the court will not set it aside.

b.   Ratio of Punitive to Actual Damages

The jury awarded Plaintiff $3,000,000 in punitive damages and $5,000 in compensatory damages—a 600:1 ratio. While the Supreme Court has not set a bright-line constitutional limit on the ratio of punitive to compensatory damages, it described the 500:1 ratio in *Gore* as "breathtaking" and noted such high ratios must "raise a suspicious judicial eyebrow."   517 U.S. 559.   Experian, relying on Supreme Court *dicta*, contends the upper limit of the punitive damage ratio here is 9:1.   (Doc. 133 at 26) ("in practice, few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process") (quoting *Campbell*, 538 U.S. at 425).   Applying this ratio, Experian contends the maximum punitive damages allowed here should be $45,000—nine times the $5,000 compensatory damage award.   (Doc. 133 at 26).

The Supreme Court has noted:

> heavier punitive awards have been thought to be justifiable when wrongdoing is hard to detect (increasing chances of getting away with it), *see, e.g., BMW of North America, Inc. v. Gore,* 517 U.S. 559, 582, 116 S. Ct. 1589, 134 L. Ed. 2d 809 (1996) ("A higher ratio may also be justified in cases in which the injury is hard to detect"), or when the value of injury and the corresponding compensatory award are small (providing low incentives to sue), *see, e.g., ibid.* ("[L]ow awards of

> compensatory damages may properly support a higher ratio . . . if, for
> example, a particularly egregious act has resulted in only a small
> amount of economic damages"); 4 *Restatement* § 908, Comment c, p.
> 465 ("Thus an award of nominal damages . . . is enough to support a
> further award of punitive damages, when a tort . . . is committed for an
> outrageous purpose, but no significant harm has resulted").

*Exxon Shipping Co. v. Baker,* 554 U.S. 471, 494 (2008).   Indeed, the Eleventh

Circuit has approved of punitive damages ratios as high as 2,173:1.   *See Kemp,* 393

F.3d at 1357, 1365 (reducing the punitive award from $1,000,000 (a 8692:1 ratio) to

$250,000 on compensatory damages of $115.05 and noting a single-digit multiplier

would not effectively deter AT&T from future misconduct); *see also Johansen,* 170

F.3d at 1327, 1339 (affirming district court's entry of judgment awarding punitive

damages at 100:1 ratio).

Based on these considerations, courts have approved of nearly triple digit

punitive damage ratios in FCRA cases.   *Saunders*, 526 F.3d at 145 (affirming 80:1

ratio where defendant's intentional longstanding refusal to correct errors harmed

plaintiff's credit score and exacerbated his financial vulnerability); *Daugherty v.*

*Ocwen Loan Servicing, LLC*, 701 F. App'x 246, 248-49 (4th Cir. 2017) (remitting

$2.5 million punitive damages award (408:1 ratio) to $600,000 (98:1 ratio) where

defendant reported inaccurate information for over seventeen months despite

multiple letters, governmental inquiries, and dispute verification requests, causing

the plaintiff to be threatened with foreclosure).   The parties discussed both of the

foregoing cases in their briefs.

As Experian would have it, its conduct here was less egregious than that of the defendants in the aforementioned cases because Experian made what it casts as an isolated mistake by classifying Plaintiff's dispute as suspicious.   (Doc. 133 at 28-29; Doc. 142 at 21-22).   In contrast, the plaintiffs in *Daugherty* and *Saunders* repeatedly requested the defendants to remove incorrectly reported debts, and the defendants refused to do so for a prolonged period.   As Plaintiff would have it, Experian's conduct here is more egregious than the defendant in *Daugherty* because the defendant there was a credit furnisher, so "the act of misreporting credit information provides no direct financial benefit to a defendant."   (Doc. 139 at 34 (quoting *Daugherty*, 701 F. App'x at 260).   Plaintiff contends Experian had two financial incentives for not processing his dispute: (1) savings on the work required to process Plaintiff's dispute; and (2) attempting to sell its products when Plaintiff called the Dispute Hotline.   Plaintiff also notes the plaintiff in *Daugherty*—unlike here—had additional recourse available by disputing the debt with a CRA.   (Doc. 139 at 34-35).

In the end, the cases cited by the parties do not point to a definitive answer regarding the appropriate ratio here.   The jury reasonably decided Experian's conduct warranted punitive damages, the purpose of which is to punish past—and deter future—wrongdoing.   A single-digit punitive damage ratio here would be insufficient to deter future similar conduct by Experian.   *See Kemp,* 393 F.3d at

1357, 1365.   However, the court's eyebrows were—and remain—suspiciously cocked in light of the 600:1 ratio of punitive to compensatory damages.   This, together with the relatively minor injury—both in severity and duration—Plaintiff experienced warrant remittitur to the 98:1 ratio the Fourth Circuit approved in *Daugherty*, 701 F. App'x at 248-49.[3]   Accordingly, Experian's motion for remittitur will be granted, and the jury's punitive damages award will be reduced to $490,000. The court finds this amount serves the purposes of punitive damages by punishing Experian and deterring future wrongdoing, while not running afoul of due process principles.

### B.     Experian's Motion for Credit on Judgment

Also pending is Experian's motion for credit on judgment, seeking to reduce the judgment against it by $76,500.   This figure represents the combined settlement proceeds paid by Equifax and PRA—the two defendants which executed *pro tanto* settlements with Plaintiff before trial.   (Doc. 132).   The undersigned construes the motion as invoking Rule 60(b)(5).   *See BUC Int'l Corp. v. Int'l Yacht Council, LTD*, 517 F.3d 1271, 1274-75 (11th Cir. 2008).   The motion is accompanied by sealed

---

[3] As Plaintiff's counsel noted in his closing remarks regarding the applicability of punitive damages:

> Some people may not think that's fair. And you know what? I'm not sure that I do. But that's the law, and we are charged with following the law. That is the system we have in place, and that is following the oath you took when you walked in here.

(Doc. 130 at 101).

copies of the settlements at issue.   (Doc. 134).   The court has already determined

the one satisfaction rule applies to this case due to the indivisibility of the injury

described by Plaintiff.   (Doc. 84).   Nothing transpired at trial to change this

conclusion, which will not be discussed further.

What does bear discussion is Plaintiff's contention that any credit on judgment

be limited to the compensatory damage award rather than the punitive damage

award.   (Doc. 135 at 9-10).   Plaintiff, relying on *Ratner v. Sioux Nat. Gas Corp.,*

719 F.2d 801 (5th Cir. 1983), contends the one satisfaction rule does not apply to

punitive damages.   (*Id.*).   In *Ratner*, the Fifth Circuit held:

> the rationale of the "one satisfaction" rule is usually inapposite to
> punitive damages.   The purpose of the rule is to ensure that a plaintiff
> receives no more than full compensation for his loss.   *See, e.g.,*
> *Dobson v. Camden,* 5 Cir. 1983, 705 F.2d 759, 766, *reheard en banc,*
> Sept. 13, 1983 (No. 82–2066); *Snowden v. D.C. Transit Systems,* D.C.
> Cir. 1971, 454 F.2d 1047, 1048; *Harrington v. Texaco, Inc.,* 5 Cir.
> 1964, 339 F.2d 814, 820, *cert. denied,* 1965, 381 U.S. 915, 85 S. Ct.
> 1538, 14 L. Ed. 2d 435.   A plaintiff awarded punitive damages has
> been given the right to receive more than "one satisfaction".   The
> award of punitive damages is unconcerned with compensation; it is
> intended to punish the wrongdoer and to deter the commission of
> similar offenses in the future.   *E.g., City of Newport v. Fact Concerts,*
> *Inc.,* 1981, 453 U.S. 247, 266–67, 101 S. Ct. 2748, 2759–60, 69 L. Ed.
> 2d 616; *Maxey v. Freightliner Corp.,* 5 Cir. 1982, 665 F.2d 1367, 1378;
> 17 Tex. Jur. 2d *Damages* § 174, at 240–41 (1960).   To further the
> objectives of punishment and deterrence, it is more important that a
> defendant pay for his wrongdoing than that the plaintiff receive the
> payment.   *Dobson v. Camden,* 705 F.2d at 769–70.

719 F.2d at 804.

In response, Experian contends Plaintiff's closing arguments removed the instant matter from the category of typical cases described in *Ratner*, thus requiring credit on the entire judgment, not just the compensatory damages awarded.   (Doc. 138 at 3).   In particular, Experian points to Plaintiff's statements regarding the impact of a large punitive damage award in this case:

> [Punitive damages] punish Experian, and they make an example out of Experian.   They are one of three major credit reporting agencies. And if you think for a minute the other two aren't paying attention to what goes on in this room, you're crazy.

(Doc. 130 at 100).    Experian also cites *Enstar Group v. Grassgree*, 812 F. Supp. 1562, 1582-84 (M.D. Ala. 1993), in which the district court employed the one satisfaction rule to reduce the total damage award—both compensatory and punitive—against the *pro tanto* settlement proceeds.   (Doc. 138 at 4-7).

As an initial matter, even if Experian were correct that the one satisfaction rule applied to punitive damages in this case, it would only apply to reduce the award by Plaintiff's settlement with Equifax.   Under Experian's theory, Plaintiff's reference to the two other CRAs at closing warrants a credit on the entire award under the one satisfaction rule.   Here, Equifax was originally a defendant and settled *pro tanto*.   However, the third CRA, Transunion, was never a defendant in this matter.   Instead, the other settling defendant in this case was Portfolio Recovery Associates, which is not a CRA.   Experian does not contend Plaintiff

encouraged the jury to assess punitive damages to punish Portfolio Recovery Associates.   Accordingly, even if the one satisfaction rule applied against punitive damages here, it would not account for the settlement proceeds from Portfolio Recovery Associates.

However, the one satisfaction rule does not apply to the punitive damages awarded in this case.   In *Enstar,* the court applied the one satisfaction rule to reduce the entire damage award—both punitive and compensatory—because the claim at issue arose under Alabama law.   812 F. Supp. at 1583.   The court noted "current law in [Alabama] is that . . . a settlement of a punitive damages claim by one joint tortfeasor must be credited against a subsequent punitive award against the other tortfeasor."   *Id.*   "Thus, since these damages were based on a state law claim," the court reluctantly credited the proceeds from the settling defendant against the entire judgment.   *Id.*

Because the claims in the instant case arise under federal law, the rationale of *Enstar* does not apply.   Moreover, this court agrees with the rationale expressed by the Fifth Circuit in *Ratner.*   The one satisfaction rule "operates to prevent double recovery, or the overcompensation of a plaintiff for a single injury."   *BUC Int'l Corp.*, 517 F.3d at 1277.   Because punitive damages serve to punish and deter the defendant—not compensate the plaintiff—the rationale underpinning the one satisfaction rule does not apply to punitive damages.

For the foregoing reasons, Experian's motion for credit on judgment will be granted in part.  Accordingly, due to Plaintiff's settlements with the other two originally-named defendants in this case, Experian will receive a credit on the compensatory damages awarded by the jury.  Because these settlement proceeds exceed the jury's compensatory damage award and the injuries the Plaintiff described are indivisible between Experian and the settling defendants, Plaintiff's compensatory damages have already been satisfied.  Accordingly, Experian will not be required to pay the compensatory damage award.   Experian will be required to pay the punitive damage award, as remitted.

### C.    Plaintiff's Motion to Alter or Amend

Finally, Plaintiff has filed a motion to alter or amend the final judgment in this matter.  (Doc. 128).   Plaintiff's motion concerns the language in the final judgment dismissing this matter with prejudice.  (*See* Doc. 122).   As explained during a telephone status conference, this language was intended to address the finality of the dismissal orders regarding the settling defendants.   Because an amended final judgment will be entered, the plaintiff's motion is moot.

## IV.   CONCLUSION

For all of the foregoing reasons, Experian's combined post-trial motion is **GRANTED IN PART** and **DENIED IN PART**.  (Doc. 133).  Specifically, the motion is **GRANTED** to the extent it seeks remittitur of the jury's punitive damage

award, which will be reduced from $3,000,000 to $490,000; the motion is **DENIED** in all other respects. (Doc. 133). Experian's motion for credit on judgment is **GRANTED IN PART** and **DENIED IN PART**. (Doc. 132). Specifically, the motion is **GRANTED** to the extent it seeks credit against the jury's compensatory damage award under the one satisfaction rule; the motion is **DENIED** to the extent it seeks credit against the jury's punitive damage award. (Doc. 132). Accordingly, because Plaintiff has already received settlement proceeds which exceed the compensatory damages the jury awarded against Experian, Experian is not required to pay the jury's compensatory damage award. Plaintiff's motion to alter or amend is **DENIED** as **MOOT**. (Doc. 128).

> **DONE** this 21st day of March, 2019.

> STACI  G. CORNELIUS
> U.S. MAGISTRATE JUDGE